## Northwestern Mutual Life Insurance Co. v. Neafus.

(Decided November 28, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Insurance, Life—Construction of Application.—Where an application for insurance, and a receipt given for the first premium provided that if the application was approved the insurance applied for would be in force from the date of the medical examination, the approval of the application was under the facts of this case necessary to complete the contract.

2. Same—Medical Examination, When Completed.—Where a medical examination is made that shows the applicant not to be a desirable risk, and it is agreed between him and the examiner that the medical report shall be retained until he can submit to another examination, no medical examination within the meaning of the application has been made.

3. Same—Application—Construction of.—An application and receipt given for the first premium that state that the applicant will stand insured from the date of the application, if it is accepted, will not be construed to mean that he is insured from the date of the application until it is rejected or approved.

4. Same—Application Only a Proposal, Not a Contract.—An application for insurance is merely a proposal, and does not become a contract between the parties until it has been accepted.

5. Same—Application—Effect of Delay in Acting Upon.—It is the duty of an insurance company to act with reasonable promptness upon applications for insurance; but if the application whenever acted upon would have been rejected, the delay of the company will not make it liable. If, however, action upon an application that would have been approved is unreasonably delayed, and it is rejected solely because the applicant has died the company cannot escape liability on the ground that it did not accept the application.

6. Same—Medical Examiner Agent of the Company.—When a Medical Examiner holds the report of his examination after he has been directed by the applicant to forward to the company, he will be treated as holding it as agent of the company, and the com-

pany will be chargeable with any consequences that follow from his neglect in forwarding it.

TYLER BARNETT for appellant.

BULLITT, RYAN & HEMPHILL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the 23d of July, 1908, T. J. Neafus applied to the appellant for a policy of life insurance in the sum of one thousand dollars, payable to his wife, the appellee. The application was made upon a printed form, in which it was provided that:

"I agree that if the amount of the premium on the insurance herein applied for is not paid when this application is made, no contract of insurance shall be deemed made, and no liability on the part of said company shall arise until the policy shall be issued and delivered to me, nor until the first premium shall be actually paid while I am in good health; but that if the amount of said premium is paid at the date of making this application, the receipt for the advanced payment of premium given me if on the form now attached hereto shall determine the conditions upon which and the time when the insurance applied for is to take effect."

The first premium was $27.71, and for this amount Neafus at the time he made the application executed to L. L. Anderson, agent of the company, his note due October 12, 1908. Thereupon, Anderson issued to Neafus the following receipt:

"An application for a one thousand dollar policy having been made by T. J. Neafus to the Northwestern Mutual Life Insurance Company, there has been collected the sum of $27.71 to be considered the first annual premium on said policy; provided, the application is approved by the company at its home office; and, in that event, the insurance as applied for will be in force from the date of the Medical Examination; if the application is not so approved, the sum collected will be returned."

On the same day, Neafus was examined by Dr. Woody, the Medical Examiner for the company, and as a part of the medical examination answered a number of questions propounded to him. Neafus died suddenly on September 5th, 1908, and before either the application or the medical report had been forwarded to the company. The company declining to pay the insurance

upon the ground that no medical examination had been made, and for the further reason that the application was not accepted during the life of the applicant and would not have been accepted at any time this suit was brought to recover it.

It appears from the uncontradictel evidence introduced upon the trial that the medical examination of Neafus disclosed that he was not an acceptable risk, and that at the end of the examination when this condition was made known, Dr. Woody suggested that Neafus submit to another examination, telling him that he would hold the report of his examination and if it appeared that the symptoms he then found and which induced him to believe and report that Neafus was not a proper subject for insurance had disappeared, he would make another and more favorable report and forward it to the company. To this arrangement, Neafus agreed, and Dr. Woody took to his office the report of the examination and retained it until after the death of Neafus; and Anderson, the agent who was present when the medical examination took place, also retained the application, intending to forward it to the company with the medical report of Dr. Woody, thereafter to be made. It further appears from Dr. Woody's evidence, that after waiting several days for Neafus to appear and receive another examination, he called up his residence and urged the wife of Neafus, with whom he talked over the telephone, to insist on Mr. Neafus coming to his office so that he might make another examination, and that she promised each time that he called up that his request would be complied with by her husband. Mrs. Neafus, however, does not agree with Dr. Woody as to these telephone conversations. She testifies that Wr. Woody told her he would like to give Mr. Neafus another and better examination, and that she replied: ''Well, I will tell him what you said, but I think it is best to put it in as he has had one examination.'' That about a week after this, and within ten days after July 23rd, she had another conversation with Dr. Woody over the telephone, in which he insisted as he did in the first, that Mr. Neafus come to his office for another examination, and she again said to him, speaking for her husband, who was present: ''Send in the examination you have made, just like it is;'' to which Dr. Woody replied, ''Well, I'll do that.'' And she then said, ''Now, you just turn it in and let the company be responsible,'' and

he said "he would." No other conversation was had in reference to the matter until after Mr. Neafus died. It is also shown that if the examination and medical report had been promptly forwarded that the company would have rejected the application.

With the evidence in this condition, the trial judge was of the opinion that after the medical examination was made, the applicant was insured until the company acted upon his application by accepting or rejecting it, and instructed the jury to return a verdict in favor of the appellee, which was done. From the judgment entered on this verdict, the company prosecutes this appeal, and insists that the jury should have been directed to return a verdict for it.

The receipt given to Neafus is the foundation of the action, and if its terms are to control, the trial judge was in error; but, if the receipt is subject to the construction placed upon it by the lower court, then the direction to return a verdict against the company was correct. But, before taking up the proper construction of the receipt given by Anderson to Neafus, the question arises: Was a medical examination within the meaning of the receipt made? Evidently the medical examination contemplated by the receipt is a final examination or an examination that the applicant desires to submit to the company as a part of his application. We think there can be no doubt about the proposition that when a report of a medical examination is retained by the Medical Examiner under an arrangement or agreement with the applicant that it shall not be forwarded to the company until another examination is made, that it is not an examination within the meaning of the receipt. The medical examination intended by the language of the receipt means a medical examination made by an agent of the Company to be forwarded to it—not a medical examination to be retained by the examiner at the request of or under an agreement or arrangement with the applicant. In no view of the case that we can conceive of would the insurance under the terms of the receipt be in force from the date of a medical examination, the report of which it was agreed by the applicant should not be forwarded to the company for its approval or rejection. And so, except for the conversations had between Dr. Woody and Mrs. Neafus, the jury should have been instructed to return a verdict in favor of the company upon the ground that

no medical examination within the meaning of the receipt had ever been made. But Neafus, of course, had the right to withdraw his consent to the arrangement that Dr. Woody should retain the medical report until another examination was made, and the right to decline to submit to another examination and to stand on the one already made; and if his wife acting for him informed Dr. Woody that he declined to submit to another examination and directed that the medical report already made should be forwarded to the company the company would be liable if Dr. Woody afterwards failed to promptly forward his report, unless it be that in no event is the company to be held responsible unless and until it shall have approved or accepted the application. After Dr. Woody was directed to forward the report, he held it as the agent of the company. It is bound by his acts in respect to it, and chargeable , with any consequences that may have resulted from his failure to promptly forward it. In other words, if the company was under a duty to promptly act on the application and notify Neafus of his rejection, it cannot shield itself from responsibility by the fact that the application and medical report had not been received by it and therefore it could not act. The possession of the application and medical report by its agents had the same effect as if they were in the possession of the company at its home office. Looking at the matter from this standpoint, we will treat the medical examination as made on the day that Dr. Woody was directed to forward it, which we will say was August 5th. It may also be assumed that if the report of the examination had been forwarded on August 5th, that it would in the ordinary course of business have reached the home office of the company and have been rejected by it and Neafus notified of this fact in ten days thereafter, or on August 15th, twenty days before his death. The question to be considered upon this state of facts is: Was Neafus insured from August 5th, the date we have assumed that the medical examination was completed. It is said that he was for two reasons: First, because under the terms of the receipt he was insured from the date of the medical examination until it was acted upon, that is, accepted or rejected by the company; and Second, because by its delay in failing to take such action after the medical examination was received by it, the law in behalf of the applicant raises the presumption that the company had accepted

the risk. Taking up first the proposition that Neafus was insured from the date of the medical examination until the company acted upon it, we must go outside of the receipt for authority that would warrant us in putting the liability of the company upon this ground. The receipt is not complicated or difficult to understand. It is a brief, plainly written paper that any person of ordinary intelligence could readily and easily comprehend the meaning of. Nor is it susceptible of two interpretations. It states that an application for a One Thousand Dollar policy having been made by T. J. Neafus to the company, there has been collected of him $27.71, to be considered the first annual premium on said policy—provided, the application is approved by the company at its home office, and, in that event, the insurance as applied for will be in force from the date of the medical examination. It is plain that to construe this receipt into an obligation on the part of the company that it had insured Neafus from the date of the medical examination until he was rejected, would make a radical and material alteration in its terms. To so construe it we must make the receipt read in substance that in consideration of the premium the insurance as applied for will be in force from the date of the medical examination until the application has been approved or rejected by the company, thereby putting into the receipt words that cannot be inserted without giving to it a meaning entirely different from what it was intended to have, and making, in fact, a contract between the parties that neither of them at the time had in mind. We recognize, and have often applied in the construction of insurance contracts, the rule that they must be liberally construed in favor of the insured, but we have never gone to the extent of putting into the contract words that would make a radical change in its meaning or that would make for the parties a contract they did not make for themselves. There is nothing unfair or unreasonable or oppressive in the conditions of this receipt. It is simply a proposition made by the company to the applicant. It in substance tells him that if he wants insurance, he can pay the first premium, submit to a medical examination, and then if the company regards him as a desirable risk it will issue to him a policy that will relate back to and be in effect from the date of the medical examination. When the applicant accepts this proposal, he agrees to its terms and conditions, and cannot be excused from knowing when

his insurance will begin. If we should say that under the receipt the applicant was insured from the date of his medical examination, although the company might reject the application, we would put the company in the attitude of insuring a person whether he was a desirable risk or not. It would place upon it the burden of carrying without its consent a risk that it did not and would not assume. Take this case as an illustration. Neafus was not a desirable risk. No company would have given him insurance. But if the construction contended for is to obtain, the fact that he applied to an agent for insurance and submitted to a medical examination that showed him not to be a suitable subject for insurance, must be held to give him insurance from the date of his examination until the company has had opportunity to reject his application. We cannot give the receipt the construction contended for.

It is fair, however, to the trial judge to say that he was influenced to put his decision upon the ground that Neafus was insured from the date of the medical examination until his application was acted upon by being either accepted or rejected, by the opinion of this Court in Halle v. New York Life Ins. Co., 22 Ky. L. R., 740. In that case, Halle, on September 20, 1892, applied to a general agent of the company for insurance on his life. He submitted to the required medical examination and paid the first premium. Whereupon, the agent gave him a receipt, setting out the payment of the premium, and providing in substance that if the application was accepted by the company, and a policy issued, the insurance should begin on the date of the application. The application reached the home office of the company on the 25th of November, 1892, but instead of either accepting or rejecting it, the company issued a policy different from the kind Halle contracted for. Upon learning this fact, in March, 1893, Halle declined to accept the policy issued and so wrote the company. In April, 1893, the company reconsidered the matter, and agreed to issue the policy Halle applied for, and so wrote him, but he had died on March 30th. The company declined to pay the insurance upon the theory that no insurance had ever been effected, as the minds of the contracting parties had never met. Suit was then brought by Halle's widow and children, and the trial court dismissed their petition. Upon an appeal to this Court, we said:

"Manifestly, as contended, there can be no recovery

in the case unless the minds of the contracting parties met. But if a valid contract was made when the first premium was paid to the company's agents, and a receipt delivered therefor, then the minds of the parties did meet. It seems to us, as already indicated, that a contract, to the effect that the insurance was to begin on the 21st of September, 1892, is established beyond any doubt. This contract does not depend alone on the testimony of the witnesses, although that is unequivocal and conclusive. The proper and necessary construction of the terms of the receipt is that the applicant stands insured from the date not only until the application is accepted but also until it is rejected. The company must act in order to rid itself of the obligation it assumes in accepting the money of the applicant, and agreeing, in the event of accepting the insurance, to have it reach back from the date of the application. The company on receiving this application, in this case, might have accepted or rejected it. It was bound to do the one thing or the other, or else prolong its liability whilst considering what it might do toward getting a more favorable contract with the applicant. We think the simple meaning of the receipt is that the applicant should stand insured unless the insurance should be rejected. To the contention that the applicant agreed otherwise in the application, and that no officer or agent other than the president, could make special contracts, it is sufficient to say that the agent, Garcia, was the general agent of the company * * * * * * * *. This agent does not testify, and the disinterested witnesses present when the transaction with Halle occurred leave no room to doubt the terms of the contract. It was pressed on the applicant that he stood insured from the very time he paid his money * * * * * * * *."

It will be observed that in this case it was agreed by and between Halle and the agent of the company having authority to speak for it and to vary the terms of the application, that Halle stood insured from the date of the receipt, and from the language of the opinion it cannot be doubted that this parol contract between Halle and the agent was in itself sufficient to authorize the court in holding that Halle was insured from the date of his application. But the court, in addition to putting its decision that the company was liable upon this ground, also said that aside from the parol contract that fixed the liability of the company, it was bound by the terms

of the receipt. To so much of the opinion as gives to the receipt the construction indicated, we do not agree. This part of the opinion may with much propriety be treated as dicta—not necessary to the decision of the case.

The other question, that the delay of the company in acting upon the application created the legal presumption that it had been accepted, presents a question of more difficulty. Upon this point the argument is strongly pressed that when an application for insurance like this is made to a company, that it is the duty of the company within a reasonable time thereafter to notify the insured whether his application has been accepted or rejected, so that he may govern his actions accordingly. It is said with much force that when a person desiring insurance has made application to the company of his choice for the amount of insurance that he wants, that he does not feel inclined to apply to any other company until he is advised that he cannot obtain it in the company to which he has made application. And that, pending the disposal of the application by the company, he may if his application is rejected be without insurance, although he might have been able to obtain like insurance in another company. It is therefore said that fair dealing and justice to applicants for insurance demand that insurance companies shall promptly notify applicants whether the insurance they applied for will be issued or not, and that if the company fails to give such notice promptly or within a reasonable time, the application should be treated as accepted and the applicant as insured from the date specified in the receipt or contract given to him when his application was made. In support of this theory, the case of Mississippi Valley Life Insurance Co. v. Neyland, 9 Bush, 430, is relied on, but we do not think it pertinent to the issue. The question of the applicant being insured from the date of the receipt given to him by the agent who took his application, or the question as to the delay of the company in acting upon the application, was not brought before the court, as neither of these questions was involved in the case. The right of an insurance agent to accept a note for the first premium in lieu of money was the principal and indeed the only issue in the case presented to the court or decided by it.

Counsel also refer us to Continental Insurance Co. v. Haynes, 10 Ky. L. R., 276, decided by the Superior Court of Kentucky. In that case it appears that on the 1st day

of March, 1883, Haynes applied to an agent of the company for insurance upon a dwelling house, and paid the first premium. His application and the receipt set out in substance that the insurance applied for should not be binding until the application was approved by the company. On the 13th of March the property upon which the insurance was applied for was destroyed by fire. The company declined to pay the insurance, and Haynes brought suit. It appears from the opinion that the company claimed that the application had not been received or approved before the fire and therefore no liability attached, although the agent testified that he promptly forwarded it to the company and it should have been received by it some days before March 13. The company put its refusal to pay solely upon the ground that the application had not been approved by it. It seems to have been conceded that the application would have been accepted and a policy issued, if it had been received before the fire. In holding the company liable, the Court said:

"The question arises, what contract was made by the agent of appellant with appellee as evidenced by the application and receipt before referred to? Did the contract of insurance take effect from the acceptance of the application, the cash premium, and the premium notes by the agent, subject to the right of the company, within a reasonable time, to reject it for cause, or was the application and transaction with the agent simply a proposal for insurance not to take effect until the company approved and issued its policy? * * * * * * To hold that an application made under such circumstances may be rejected on the sole ground that it was not received before the property was destroyed would certainly be to trifle with the rights of those who seek protection from these chartered agencies. * * * * * * * * The premium is the price paid for indemnity, and is earned so soon as the risk attaches; the converse is, and ought to be, true, that protection is purchased so soon as the rate is fixed and agreed upon, and the premium paid to one authorized to receive it. It is to be assumed that the company will accept the risk, if advantageous to it, which it must be if fairly and honestly contracted for, because that is the business in which it is engaged, and that is the object for which its agent acted; and, therefore, to allow it, under the reservation of the right to approve, to reject simply because a loss has occurred would destroy

the mutuality of the contract and inflict upon one party the misfortune he had provided against.''

The decision of the Court was clearly put upon the ground that the only reason why the company refused to approve the application was because the property had been destroyed. If the property had not been destroyed, the application would have been accepted. There is much force in the reasoning of the court and we are not disposed to question the soundness of the conclusion reached upon the ground stated. If, in this case, there was evidence that the company was induced to reject the application for the sole reason that Neafus had died before it acted upon it, or to show that his application except for the fact of his death would have been approved, we would have a very different question. We think there is a sound and well defined distinction between a case in which the application under no circumstances would have been accepted, and a case in which it would have been accepted except for the fact that the applicant died before it was acted upon and after the company had a reasonable time in which to act.

While the application and receipt are to be treated merely as a proposal for insurance that it is with the company at its election to accept or reject, it may well be said that the company must act honestly and fairly on the application submitted to it and which it impliedly at least agreed to accept if satisfactory to it, and that if an application is satisfactory and the company if it had acted in a reasonable time would have accepted the risk it should not be allowed after holding the application for an unreasonable time to reject it solely because of the death of the applicant. But, treating the case as we find it in the record, the delay however unreasonable it may have been, can not be construed into an acceptance of an application that no well-managed company in the ordinary course of its business would have accepted. With the exception of the Halle case, we have not been referred to any authority nor have we been able to find any supporting the proposition that in a case presenting facts like this, delay in acting upon an application would make the company liable.

On the contrary, all the authorities we have examined hold that when an application for insurance is made, and a receipt given as in this case for the first premium, mere delay in acting upon an application that if acted on would be rejected does not fix liability upon

the company from its date, when the application is made subject to approval by the company and it is expressly provided in the contract that the insurance shall not relate back unless the application is accepted. There is quite a difference between an offer to enter into a contract that may or may not be accepted, and a contract that has been executed.

Without extending the opinion in quoting from the cases, we refer to the following as fully supporting the principles announced. New York Life Insurance Co. v. Levy, 122 Ky., 457; Provident Savings Life Insurance Co. v. Elliott, 29 Ky. Law Rep., 552; Hill's Admr. v. The Penn Mutual Life Insurance Co., 28 Ky. Law Rep., 790; Commonwealth Life Insurance Co. v. Davis, 136 Ky., 339; Travis v. Insurance Co., 104 Fed. Rep., 486; Mutual Life Ins. Co. v. Young, 90 U. S., 85, 23 L. Ed., 152; Mohrastadt v. Mutual Life Ins. Co., 115 Fed. Rep., 81; Insurance Co. v. Mays, 61 Ala., 163; Messelhorn v. Mutual Reserve Fund Assn., 30 Fed Rep., 545; Cooley's Briefs on Insurance, Vol. 1, page 426.

Upon the whole case, we are of the opinion that the jury should have been instructed to return a verdict for the insurance company.

Wherefore, the judgment is reversed for proceedings in conformity with this opinion.