## Prudential Ins. Co. of America v. Jenkins.

May 29, 1942.

804

Pentecost & Dorsey for appellant.

Charles G. Franklin for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This appeal is from a judgment rendered by the Circuit Judge sitting as the trier of the law and facts awarding the appellee $2,000 as the beneficiary of an insurance policy, applied for but not issued, on the life of her fifteen year old son, William L. Jenkins, who was accidentally drowned on October 31, 1939. The application was signed by young Jenkins on October 23d, and rejected by the appellant insurance company on November 2d, after it had received notice of his death. Appellee alleged and proved to the satisfaction of the trial court that appellant's agent, James L. Long, who wrote the application, agreed that the insurance should be in effect from the date of the application, and thereby waived a provision to the contrary contained therein. Appellant's main defense was that Long had no such authority; that by the terms of the application, the appellant reserved the right to reject it; and that since, under the company's established rules, the applicant was not eligible for the type of insurance applied for, it was within its rights in rejecting the application, thus restoring the status existing prior to its execution.

The more detailed statement of facts necessary to make intelligible the application of the rules of law we deem controlling may be commenced properly by setting forth so much of Long's contract of employment with the appellant as relates to or indicates his powers and duties:

"Section 7—That if the Company shall return the premiums upon a policy the Agent shall repay to the Company, on demand the amount of compensation received by him on such premiums.

"Section 8—That no compensation shall be al-

lowed upon any premium, or portion thereof, payment of which is waived because of the Disability Clause contained in the policy.

"Section 9—That no assignment of compensation accrued or to accrue under this agreement shall be valid as against the Company unless authorized in writing by the Company.

"Section 10—That the Agent shall be governed by the written and printed instructions and rules which he may from time to time receive from the Company.

"Section 11—That all premiums collected by the Agent shall be the property of the Company and shall be turned over to the Company by the Agent without deduction.

"Section 12—That the Agent has no authority on behalf of the Company to make, alter or discharge any policy contract, to extend the time for paying a premium, to waive forfeitures, to incur any liability on behalf of the Company, or to allow the delivery of any policy unless the applicant be in good health and the first premium paid in full.

"Section 13—That the agent shall not pay or allow, or offer to pay or allow, as an inducement to any person to insure, any rebate of premiums or any inducement whatever not specified in the policy.

"Section 14—That the Agent shall not insert any advertising matter in any publication, or issue or distribute any circulars or papers, or write any letters to any publication, or use any language, respecting any life insurance company, tending to bring it into disrepute.

"Section 15—That this contract may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least seven days before the date therein fixed for such termination; that the Company may immediately terminate this contract if the Agent fails to comply with any of its conditions or obligations."

As shown by the date of the contract, Long's representation of the company as agent had been of lengthy

duration, and it may be assumed, as intimated by the testimony, that he was the sole agent of the company in the county of appellee's residence, or, at least, the only one known to Jenkins' father and the latter's partner whose application to Long for insurance for their employees resulted in the individual application of young Jenkins.

The type of insurance here involved was known as "wholesale insurance" issued to groups composed of not less than ten nor more than forty-nine employees of a single company. Individual policies were issued to each employee, and applications were required, both from the employer and each member of the group. The principal difference between it and what is known as "group insurance" is that the latter type requires fifty or more employees who are not required to make individual applications, and receive certificates referring to the "master policy" which is issued to the employer. Among appellant's printed rules pertaining to the issuance of wholesale insurance were the following:

"Employees who are not regularly employed full time will not be considered as eligible for Wholesale insurance. Such persons as Staff Doctors at Hospitals, Volunteer Firemen, etc. will be considered as parttime employees and not eligible for Wholesale insurance."

"Wholesale insurance will not be issued to employees between the ages of 15 and 75, inclusive, ages taken at nearest birthday."

The father of William L. Jenkins was a member of the mine operating partnership of Jenkins & Manire, and Long had solicited the partnership to take out "wholesale insurance" on its employees. On October 23, 1939, pursuant to an engagement, he visited the company's mines, secured an application from the partnership and separate applications, as required by appellant's rules, from thirty-one of the employees there present. It was then suggested by Manire that Jenkins' two sons, William L., aged fifteen, and Elijah C., aged seventeen, should be included, since "the Jenkins boys were very close to me." Thereupon, they went to the Jenkins home and secured the applications of the two boys. Jenkins, Sr., signed the application required of the employer, and paid to Long the first premium of $88.80, of

which, he borrowed $60 from Long. It is admitted that Long wrote the applications which were signed by the Jenkins boys, and that he knew that William L. Jenkins was fifteen years of age but through oversight inserted in the application as his birth date "September 14, 1925," instead of September 14, 1924. In filling in the blank space in which the applicant was required to answer the question, "Are you a permanent regular employee?" Long inserted, "Yes, during the summer and Saturdays. Attends school." The next question in the application, "How many hours a week do you work?" was left unanswered. For reasons hereafter apparent it is not necessary to set forth the testimony as to the duties actually performed by young Jenkins for the partnership, or the time which he devoted to it. Neither is it necessary to discuss the testimony relative to what Long actually said as to when the insurance would become effective, since the court found upon sufficient evidence to support the finding that:

> "on the said 23rd day of October, 1939 after the payment of the premium referred to above, and the signing of the application by the said William L. Jenkins, the defendant's agent and representative, James L. Long, in consideration of the premium already paid to it, agreed with the said William L. Jenkins that the policy applied for would be, and was, then and there in effect, and that he was insured from that day forward."

The affidavits of appellant's home office employees, which, by agreement, were admitted in evidence as their depositions, showed that while the company had been notified of William L. Jenkins' death prior to November 2d, the date on which the applications were examined in the regular course of the company's business, the company's officers charged with that duty rejected young Jenkins application because it showed that he was under the prescribed age limit, and because his answer to the question, "Are you, a permanent regular employee?" and his failure to answer the succeeding question, "How many hours a week do you work" showed that he was not a full-time employee within the meaning of the company's rule heretofore quoted, and that, because of these facts, he was not eligible for wholesale insurance. At the same time the examiners also rejected the application of Elijah C. Jenkins, presumably, although the record

does not show, because he was a student at a military academy. The remaining thirty-one applications were approved, but Jenkins and Manire refused to accept the policies issued thereon because of the rejection of the applications of the Jenkins boys.

Following the questions pertaining to his employment and insurability, the application signed by William L. Jenkins concluded as follows:

"Caution—Consideration Cannot Be Given to This Application Unless All Questions Are Answered In Full.

"Please read the following declaration carefully before signing.

"I Hereby Declare that all the statements and answers to the above questions are complete and true, and I agree that the foregoing, together with this declaration, shall constitute the application and become a part of the contract of insurance hereby applied for to-wit, term insurance renewable annually as long as I remain in the employ of the employer through whom the premiums are to be paid. I further agree that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and that unless payment on account of the first premium under the policy is made by my employer, named above, at the time of making this application, the policy shall not take effect until issued by the Company and received by me and the full first premium thereon is paid, while my health, habits and occupation are the same as described in this application. It is understood and agreed, however, that if at the time of signing this application payment on account of the first premium is made by my said employer, the insurance shall take effect from the date of this application, in accordance with the provisions of the policy hereby applied for, *provided that this application and at least nine other applications for term insurance policies, renewable annually, on the lives of other employees of said employer are approved and accepted at the Home Office of the Company, in Newark, New Jersey, under the plan, for the premium paid and amount of insurance applied for.* I hereby expressly waive, on behalf of myself and of any person who shall have or

claim any interest in any policy issued hereunder, all provisions of law prohibiting any physician or other person who has attended or examined me or who may hereafter attend or examine me from disclosing any knowledge or information which he thereby acquired. *It is further understood and agreed that no Agent has power in behalf of the Company to make or modify this application for insurance or to bind the Company by making any promise, or by making or receiving any representation or information.*

"I hereby request that notices of premiums becoming due be sent to my said employer, and I elect to have any dividends accruing under the policy hereby applied for used in reduction of premium.

"Witness to applicant's
signature ......................James L. Long
"(Full signature of person
whose life is to be insured)
"William L. Jenkins

"Dated At Sturgis, Ky. this 23rd day of October, 1929." (Italics ours.)

The back of the application contains the following indorsement made at the home office of the company:

"Memorandum—Not eligible? 14 Yrs. old See 14116."

We construe the quoted provisions of the application to mean that the company reserved the right, within a reasonable time, to reject the application; and that while, if the application was accepted and the first premium was paid by the employer, the insurance related back to the date of the application, it did so only in the event the application was accepted or not acted upon with reasonable promptness. We do not mean to say that under the language employed by the company it possessed an unqualified right to reject the application for any reason it saw fit. On the contrary, the language employed was such as to entitle the applicant to expect and receive fair treatment which required the company, the first premium having been paid, to issue the policy so as to cover the period immediately following the date of the application, if, in the usual course of its business, but for the death of the applicant occurring during that

period, it would have done so. Northwestern Mutual Life Insurance Co. v. Neafus, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A., N. S., 1211. But we are unable to say in the light of the facts here present that the appellant either unreasonably delayed its action in rejecting the application or acted arbitrarily in rejecting it. The application did not reach the home office of the appellant in Newark, New Jersey, until October 28th, which was Saturday. On that day the office was closed; and the undisputed testimony of its officials is that the application would have been rejected in any event because it showed that the applicant was neither a full-time employee within the meaning of the company's rules nor within the age limits prescribed for that type of insurance. Appellee's counsel seeks to avoid the effect of the company's showing of a valid reason for rejecting the application and its good faith in so doing, by pointing out that the mistake as to the applicant's birth date was made by Long, who was also responsible for the failure of the applicant to answer the question pertaining to applicant's hours of employment, and by invoking the rule that knowledge of the agent is ordinarily knowledge of the company and that the company will not be allowed to escape liability on an insurance policy on the ground of misstatements contained in the application, the falsity of which were known to the agent who wrote the application or otherwise connived at the perpetration of the fraud. But a moment's reflection will compel the realization that the principles alluded to and the authorities cited in their support are inapplicable to the question under consideration, since fraud on the part of the applicant or agent is neither charged nor suggested, and the sole question is whether on the data submitted over the applicant's signature, the appellant, in the exercise of good faith, had valid reasons for rejecting the application.

This brings us to a consideration of the main question involved in this litigation which is whether Long possessed the power to waive the provisions of the application and put the insurance into immediate effect. If Long had been a "general," or, as it is sometimes referred to, an "issuing" or "recording" agent of the company, there could be no doubt of his power to do so, since the presumption of authority created by the high powers actually conferred upon and exercised by agents of this class is such as to clothe them in the eyes of the public with the incidental power of waiver. Continental

Insurance Co. of City of New York v. Simpson, 220 Ky. 167, 294 S. W. 1048. While not so broadly stated, the effect of the decisions of this and the courts of many other states is to make the presumption of the general agent's power of waiver conclusive, thus completely nullifying the effect of the printed notice usually found on insurance policies. These rulings of the state courts doubtless had their origin in the disadvantages surrounding the public, especially in sparsely settled districts, in dealing with insurance companies, arising to some extent from the many complicated printed provisions contained in the ordinary insurance policy; and they are usually justified upon the legal principle that the power to modify or rescind the pre-existing agreement is coextensive with the power to initiate it. Sun Life Assurance Co. of Canada v. Wiley, 258 Ky. 311, 79 S. W. (2d) 937. But Long was not an agent of the class under discussion. As stated in Corpus Juris, Vol. 32, Section 142, page 1065:

> "A general agent of an insurance company is generally one who is authorized to accept risks, agree upon and settle the terms of the insurance contracts, issue policies by filling out blank instruments which are furnished him for that purpose, and to renew policies already issued, as distinguished from a soliciting agent who merely procures applications, forwards them to some other officer by whom the policies are issued, collects the premiums and delivers the policies. An agent may be a general agent as to his powers, although he represents the company only in a particular locality or within a limited territory, and in the latter aspect is called a local agent."

On the contrary, he was clearly a soliciting, or, as it is sometimes called, a "special" agent within the definition above quoted. See also 29 American Jurisprudence, Section 196, page 119. Decisions of this court could be cited in which the distinctions between the two classes of agents referred to have not been accurately defined, and close scrutiny is necessary in order to determine the basis of the court's denial or affirmance of the existence of the asserted power of the agent to waive or modify. This is in part accounted for by nomenclatures deriving from geographical locations. As said in Corpus Juris, Vol. 32, page 1067:

"Although the Courts frequently inaccurately classify insurance agents as 'local' and 'general,' the extent of the territory which is to be the field of his agency is no test of the extent of an agent's authority within that field. His field of operations may be very large, and yet his powers be special and limited. And on the other hand, his field of operations may be confined to a comparatively small territory and yet his authority within that field be unlimited."

And it is perhaps impossible, as well as undesirable, to construct irremovable boundaries, either of definition or power, of the several classes of agents who function within the field of insurance. It is sufficient for the purposes of this case to say that it is settled by the decisions of this and a vast majority of other courts that agents not possessing the powers of "general agents" (and it is certain that Long did not possess them) are without power to waive provisions of applications for insurance, and their attempts and agreements to do so are not binding upon the company, except where the applicant is without either actual or constructive notice of the limitations upon their authority. See Connecticut Fire Insurance Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148, in which Commissioner Drury has thoroughly analysed the prior decisions of this court bearing upon this subject.

Since the record before us is devoid of testimony indicating that the applicant, or those acting for him, had actual notice of the limitations upon Long's authority, the remaining and crucial question is whether the applicant had constructive notice of the limitations contained in the application. An examination of the decisions of this court compels an affirmative answer. Among them is the case of Connecticut Fire Insurance Co. v. Roberts, supra, in which many of the authorities are collated, including Corpus Juris, Vol. 32, page 1065, from which is quoted with approval:

"where limitations on the agent's authority are contained in the application or policy, insured is bound to take notice thereof and cannot hold the company bound for acts of the agent beyond such limitations."

Appellee relies largely upon our decision in the case of Massachusetts Mutual Life Insurance Co. v. Sexton, 255 Ky. 309, 74 S. W. (2d) 206, which involved facts simi-

lar to those in the case at bar, with the important exception that there the agent who waived the provision in the application and agreed that the insurance should become immediately effective was the company's general agent.

Since the application signed by young Jenkins contained the statement that "no agent" of the company had the power to modify its provisions or to bind the company to the contrary, and Long was not of the class of agents who, by the law's fiat, had the power to waive and modify the terms of the application, its provisions to the contrary notwithstanding, the conclusion is unavoidable, under the precedents cited, that the contemplated benefits to the prospective beneficiary were precluded from attaching by the refusal of the appellant, for valid reasons, to issue the policy. Hence, the trial court erred in awarding appellee a recovery.

Judgment reversed for proceedings consistent with this opinion.