## LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, Appellant,

### v.

## CENTRAL STEEL PRODUCTS, INC., Appellee.

Court of Appeals of Kentucky.

Dec. 27, 1985.

Rehearing Denied March 14, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court June 3, 1986.

Roy Kimberly Snell, Robert G. Breetz, Stites & Harbison, Louisville, G.D. Milliken, Jr., Milliken & Milliken, Bowling Green, John B. Allyn, American General Companies, American General Center Nashville, Tenn., for appellant.

Steven D. Downey, Hixon & Downey, Bowling Green, for appellee.

Before HAYES, C.J., and HOWARD and WHITE, JJ.

HOWARD, Judge.

Life & Casualty Insurance Company appeals from a judgment holding it liable under a life insurance policy for compensatory and punitive damages.

Douglas Downey and Elliott Rutherford were the president and vice-president of Central Steel Products which owned life insurance policies on the two officers. Central Steel paid the premiums and was listed as the beneficiary on both policies. In 1977, the policy amounts were $200,000 on Downey and $100,000 on Rutherford.

In November of 1981, Jack Peyton, a representative of Life & Casualty, discussed a new type of life insurance policy called "Tempo Life" with Downey and Rutherford. Peyton informed them that Central Steel could have $250,000 worth of coverage for less total premium than it was paying at the time. Applications to convert to the new program were filled out and Central Steel tendered a check to Life & Casualty with Rutherford's application for $45.65, the amount of the monthly premium of the policy at the standard rate. Both Downey and Rutherford completed the necessary medical information forms and sent them to Life & Casualty. The policy covering Downey was approved and issued by January 1, 1982, and is not in

issue. The controversy involves Rutherford's application.

The application was received in the home office of Life & Casualty on November 25, 1981. However, at that time Life & Casualty had not completed its preparation of rules and procedures concerning the Tempo Life program. By December 15, 1981, these rules and procedures were set up.

The medical information form indicated that Rutherford had been treated by a Dr. Kaplan of Nashville, Tennessee, for high blood pressure. A request for medical information was sent to Dr. Kaplan on December 17, 1981. There is some dispute concerning when the $40.00 fee was paid to Dr. Kaplan and apparently that fee was not paid until January 22, 1982. When Dr. Kaplan was contacted again on February 8, 1982, the information was sent that day.

Also, on January 22, 1982, Life & Casualty's home office decided to decline Rutherford's application as incomplete. A standard letter to that effect was sent to the district office. The district office was to either send the letter and a refund check to Central Steel or have an agent (Peyton) deliver the letter and refund check. However, neither the letter of refusal or the check was delivered to Central Steel. Peyton told Central Steel that the policy was coming. On January 29, 1982, $39.10 of Central Steel's advance premium was used to pay the January premium of Rutherford's old policy.

When the medical information from Dr. Kaplan arrived on February 11, 1982, a letter from him to a Dr. Alvey, a general practitioner in Franklin, concerning the results of a treadmill stress test was attached. Dr. Alvey's name was not listed on the application form and apparently this was the first time Life & Casualty had heard that Dr. Alvey had treated Rutherford. Following a request for medical information, Dr. Alvey, on February 23, 1982, produced a "history sheet" dated January 16, 1981, revealing that Rutherford had experienced chest and left arm pain for several days with increased pain on exertion and high blood pressure. Rutherford had circled high blood pressure on his application form, but not chest pain. Life & Casualty felt that additional medical testing should be done but that proved impossible because Rutherford was killed in a motorcycle accident on February 27, 1982.

Following Rutherford's death, Central Steel asserted a claim for the full $250,000. Life & Casualty paid the $100,000 on the older policy but refused to pay the larger amount because the conditions on the policy had not been met before Rutherford died.

Central Steel then filed the instant action against Life & Casualty, agent Jack Peyton, and district manager Charles Scoggins, alleging negligence, breach of contract, and bad faith in denying the claim. The jury returned a verdict against Life & Casualty, awarding Central Steel the difference in the face amount of the two policies plus interest for a total of $206,861.20, and a like amount for punitive damages. Peyton and Scoggins were dismissed by the court.

The instructions and verdict do not make it clear on which ground—negligence or breach of contract—the jury based its decision. However, because of errors, including the creation of a tort of "negligent delay in underwriting," we must reverse regardless of the basis of the jury's decision.

■ Central Steel maintains that Kentucky law imposes a duty on an insurer to accept or reject an insurance application within a reasonable time. In its instructions, the trial court stated that Life & Casualty had a duty to exercise ordinary care in processing Rutherford's life insurance application and proceeded to list some specific duties owed. Instruction No. 1 then stated that if the jury found that Life & Casualty, or any of its agents, failed to comply with one or more of these duties and "such failure was a substantial factor in causing damage" to Central Steel, then the jury should find for Central Steel in the amount of $150,000 plus interest. We simply do not believe Kentucky law authorized such an instruction.

Central Steel relies on *Prudential Insurance Co. v. Jenkins*, 290 Ky. 802, 162 S.W.2d 791 (1942) as support for its contention. In *Jenkins*, the plaintiff sued Prudential when it refused to pay on a policy which was applied for but not issued on the life of plaintiff's deceased son. The Court stated:

> We construe the quoted provisions of the application to mean that the company reserved the right, within a reasonable time, to reject the application; and that while, if the application was accepted and the first premium was paid by the employer, the insurance related back to the date of application, it did so only in the event the application was accepted or not acted upon with reasonable promptness.

*Id.* 162 S.W.2d at 794. The "quoted provisions of the application" referred to in *Jenkins* were similar to language in the Life & Casualty policy that the contract would be in force from the time of the application if the premium was paid during the insured's lifetime and the application was approved by the company.

The Court in *Jenkins* cited *Northwestern Mutual Life Insurance Co. v. Neafus*, 145 Ky. 563, 140 S.W. 1026, 1031 (1911), in which it is said that when the first premium is paid and a receipt is given "... if an application is satisfactory, and the company, if it had acted in a reasonable time, would have accepted the risk, it should not be allowed, after holding the application for an unreasonable time, to reject it, solely because of the death of the applicant."

We think that *Jenkins* and *Neafus* merely establish that under certain circumstances, an insurance company will be held liable on its contract when it had unreasonably delayed or arbitrarily rejected an application for insurance. These cases do not create a duty to accept or reject an application in a reasonable time, the breach of which creates negligence *per se* for the insurance company. Thus, the trial court erred by instructing the jury that Central Steel could recover on that ground.

■ Instruction No. 2 was based on a contract theory. That instruction provided that an enforceable contract between Rutherford and Life & Casualty existed if the jury finds that (1) Life & Casualty approved or would have approved the application of Elliott Rutherford at a premium rate acceptable to Rutherford and (2) Rutherford paid all the money required of it by Life & Casualty. These instructions are simply in conflict with *Jenkins* and *Neafus*.

It is apparently undisputed, considering the medical record as it existed at the time of Rutherford's death and without further testing, Life & Casualty would not have insured Rutherford at the standard rate of $45.65 but would have offered him coverage at $75.75 per month. The rule established in *Neafus, supra*, 140 S.W. at 1031 is that "... mere delay in acting upon an application that, if acted on, would be rejected does not fix liability on the company...." Thus, even if the delay in processing Rutherford's application was unreasonable, Life & Casualty had a reason other than Rutherford's death to reject his application. Therefore, Life & Casualty cannot be held liable for the amounts claimed under the Tempo Life policy under either theory of the case as embodied in the instructions.

Therefore, we conclude that the trial court should have granted the appellant's motion for judgment n.o.v. Having reached this conclusion, it is unnecessary to discuss the other alleged errors, including the awarding of punitive damages.

The judgment of the trial court is reversed with direction to dismiss the complaint.

All concur.