## Aetna Life Insurance Company v. McCullagh.

(Decided November 11, 1919.)

### Appeal from Henderson Circuit Court.

1. Insurance—Agent of Insurer.—An agent who solicits insurance, takes applications therefor and delivers policies will be treated as the agent of the insurer, and not the insured, notwithstanding a provision in the policy declaring him the agent of the insured.

2. Insurance—Constructive Knowledge of Principal—Notice.—In insurance, as in other contracts, the principal is affected with constructive knowledge of all material facts of which its agent received actual notice, or acquires actual knowledge while acting

in the course of his employment and within the scope of his authority, although the agent does not in fact inform the principal thereof.

3. Insurance—Knowledge of Agent—Estoppel.—Where the agent of the insurance company in receiving an application for insurance has actual knowledge, or equal knowledge with the insured, of the facts affecting the risk asked about and answered in the application, and himself writes answers that are wholly or in part false, or by misleading statements induces the insured to make or adopt them, when the latter is acting in good faith and without intent to deceive, the insurance company, when sued upon the policy, will be estopped to rely upon the falsity of the answers to defeat a recovery.

4. Insurance—Accident Insurance—False Answers in Application.— Where in an action upon an accident insurance policy to recover for an injury caused the plaintiff solely through external, violent and accidental means, the defense interposed by the answer of the defendant was that the plaintiff in his application for the insurance made false answers to certain questions therein asked him with the purpose to deceive the insurer; that the answers were material to the risk and that the policy would not have been issued if the true facts had been made known to the insurer by the assured, the law imposed on the defendant the burden of proving the falsity and materiality of such answers, and that the policy would not have been issued if the true facts had been made known to it by the plaintiff. While in this case the evidence on these issues of fact was conflicting, as they were submitted to the jury under proper instructions from the trial court, and their finding in favor of the plaintiff, as to such issues was not flagrantly against the evidence, that court's refusal to grant the defendant a new trial on the ground that the verdict was contrary to the evidence, was not error.

YEAMAN & YEAMAN for appellant.

DORSEY & DORSEY and JOHN C. WORSHAM for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of $1,275.00, entered upon a verdict for that amosnt recovered by appellee against appellant in the court below in an action on a policy of insurance No. B. G. 23629, issued to him by appellant, December 20, 1916, whereby, in consideration of $12.50, then paid its agents, Stanley and Banks, by him, it undertook to insure the appellee for a term of six months from the date mentioned, against loss resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and

accidential means. Part 1 of the policy provided for the payment of the principal sum of insurance, or fractional parts thereof, for injuries resulting in the loss of life, or of certain members of the insured's body. Part 2 provided: "If such injuries do not result in any of the losses provided for in Part 1, but alone, totally disable the insured, that is from date of accident continuently and wholly prevent him from prosecuting any and every kind of business pertaining to his occupation, the company will pay the sum of 25 and no 100 dollars per week so long as he shall live and suffer such disability."

December 22, 1916, two days after the policy was issued and delivered, the appellee had an accidental fall causing severe injuries to his leg and knee, which necessarily resulted in a surgical operation. He was totally disabled by the fall, and such disability continued a period of fifty-one weeks and down to the bringing of the action. Although appellee made proper proofs of loss and demand upon appellant for payment of the amount due, it denied liability, which led to the institution of this action. The appellant by its answer resisted the recovery sought on the grounds that the policy was issued on an application made to it by appellee in which appellee made false answers to several of the questions therein asked him with the purpose to deceive appellant; that the answers were material to the risk and that the policy would not have been issued if the true facts had been made known to appellant by appellee. The alleged false answers were: (1) That appellee stated that no application of his for a life, health or accident policy had ever been declined, nor had such a policy issued to him ever been cancelled or a renewal thereof refused; when in fact a policy issued to him had been cancelled. (2) That he had never received indemnity for any injury or illness except as stated, which amount of indemnity stated was false. (3) That his habits were temperate, when in fact he was, and for many years had been, addicted to the excessive and intemperate use of alcoholic stimulants, and was often so greatly under the influence of such stimulants as to be in a state of semi-unconsciousness. (4) That he had not received medical attention within the past five years, except for small local disorders—last serious illness being in childhood—when, in fact, at the time the application was made and for a long time prior thereto, plaintiff's leg and knee, for which indemnity was

claimed, had been diseased and infirm, for which he had received medical and surgical attention.

All averments of the answer setting up the alleged facts relied on by appellant in avoidance of liability on the policy were specifically denied by the appellant's reply; which, in addition, alleged that the answers made by appellee to the questions asked in the application for the policy of insurance in question were all written by appellant's agent, Banks, and from his knowledge of the facts as well as that of appellee; and that none of the answers was false or made with the purpose of deceiving the appellant. The reply also set forth what was said and done both by appellee and Banks at the time the application was written, and, in substance, alleged that whatever errors of fact were contained in its statements were mere mistakes, in no sense material to the risk; that appellee's answers to all questions asked in the application or policy were made upon Banks' advice and written by him; that his knowledge of the facts stated in such answers, and as to their truth or falsity, was equal to appellee's knowledge of them; and that such knowledge on the part of Banks as appellant's agent constituted knowledge thereof on the part of appellant, which estops it to disavow the acts of Banks as its agent, and prevents it from escaping liability on the policy; which estoppel was formally pleaded in the reply and, together with all other affirmative matter of the reply, was controverted by the appellant's rejoinder.

Kentucky statutes, section 629, declares: ¯

"All statements or descriptions in any application for a policy of insurance shall be deemed and held representations, and not warranties, nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy."

It will be found that the following definition of the word "representation" as used in the law of insurance, does not differ materially from those given in the text books: A representation is an oral or written statement, which precedes the contract of insurance and becomes a part thereof, if so stipulated, made by the assured or his authorized agent to the insurer or its authorized agent and relates to facts necessary to enable the insurer to determine whether it will accept the risk and at what premium. A representation is material when it communicates any fact important to the nature of the risk, that

may be reasonably supposed to influence the judgment of the insurer in undertaking the risk or calculating the premium.

Of the many excellent definitions of a "misrepresentation" contained in the text books on the law of insurance, we regard the following the clearest in expression and meaning:

"A misrepresentation, according to the law of insurance, is the statement of something as a fact which is untrue, and which the assured states, knowing it to be untrue, and with intent to deceive, or which he states positively as true, not knowing it to be true, and which has a tendency to mislead; such fact being in every case material to the risk."

Cooley's Briefs on Insurance, Vol. 2, 1158.

With the above definitions of the terms under consideration in mind and keeping in view the rule that the burden is on the appellant to establish the defense that certain answers contained in appellee's application for the policy of insurance sued on were false and material, let us more particularly consider the character of those answers and the evidence regarding the making of the application.

Appellant's contention that appellee falsely stated in the application that no application of his for a life, health or accident policy had ever been declined, nor that such a policy issued to him had ever been cancelled or a renewal refused, is unsupported by the evidence found in the record. On the contrary the evidence shows, both appellee and appellant's agent, Banks, so testifying without contradiction, that the only policy issued to appellee that was cancelled was one of accident insurance issued by the Royal Indemnity Insurance Company and placed with its agents, Stanley and Banks, for delivery to appellee, who refused to accept it of the agents and himself ordered its cancellation because of a "rider" sent to the agents by the company after the issuance of the policy, with direction to attach it thereto, which would have excluded any claim for damages by appellee for injury to a leg formerly slightly injured in an accident. It is therefore apparent from the evidence that the statement complained of was substantially true. Appellee's application for a policy had not been rejected, nor a policy held by him cancelled. The cancellation was of a policy by his own order, following his rejection of it before its delivery

to him, because of the rider attached to it after its issuance. All of which facts were well known to appellant's agent, Banks, at the time he wrote in the application of the policy in this case the answers of appellee to the questions referred to.

We are also satisfied from the evidence that appellee's answers in the application to questions regarding past indemnities received by him from another insurance company for previous accidental injuries sustained, though short of the whole truth, were not materially false or made to deceive. His own testimony and that of appellant's agent, Banks, the former corroborating the latter, furnish the only information found in the record as to this matter. Regarding this answer, Banks said: "To the best of my recollection, Mr. McCullagh said, 'Well you know I received one or two payments from an old Travellers policy.' I said 'yes, I think I do. Do you remember the exact dates and exact amounts?' He said, 'No I don't.' He said, 'Will your records show?' And I says, 'No,' and he says, 'I think it was about $50.00, and so I wrote it down,' about $50.00." It was shown by the testimony of Ahern, an agent of the Travellers Insurance Company, introduced by appellant, that appellee had previously received as indemnity for former injuries $55.35, in June, 1913, on account of a sprain of the wrist in playing tennis; $33.93 in March, 1913, for an injury to the right knee, sustained by slipping on icy steps; and $44.60 in May, 1913, for a twisted tendon in the right knee sustained while playing tennis. So he had received for previous injuries $133.88, instead of "about $50.00," as stated in his application for the policy here sued on.

It is manifest the answer as to the past indemnities given by appellee was not intended to be accurate; and this is not strange as the indemnities were paid him about three years before his application for the policy in this case was made, and at that time he was in possession of no data for refreshing his recollection. The character of the answer he gave and his appeal to Banks to aid him from his recollection in arriving at the several amounts of the indemnities received, showed appellee's want of recollection as to the amounts received, or when received, and put appellant through its agent, Banks, on notice that he had probably received larger indemnities than stated.

We do not overlook the testimony of E. C. Bowan, appellant's assistant secretary, to the effect that in his opinion appellee's answer regarding the former indemnities received was material to the risk, and that if the appellant had known the answer as untrue, the policy would not have been issued. On the other hand, Banks, another of appellant's agents, upon being asked if appellee's application had fully stated the several amounts of former indemnities received by him, whether it would have made any difference in the issuance of the policy, answered: "Not the slightest." We quite agree with counsel that as two of the appellant's agents, one of whom took the application and delivered the policy, disagreed as to whether the answer in question constituted a material misrepresentation, it was proper to submit the question to the jury.

As to the alleged false statement in the application that appellee's habits were temperate, the reply alleged that upon reaching that matter in filling the application, Banks, appellant's agent, said to appellee: "Well, Jim, how are your habits?" To which the latter replied: "Why you know my habits as well as I do. I take a drink whenever I want it, but haven't had one for two months;" following which statement Banks said: "I will put you down as temperate." This conversation is proved by the testimony of Banks and appellee and is uncontradicted by any other witness. Several witnesses for appellant, among them two policemen, a hotel proprietor and a restaurant keeper, testified as to appellee's use of intoxicating liquors. Some of them had occasionally seen him drunk; others at various times under the influence of such liquors. A physician, Dr. Mosley, had seen appellee drunk on two occasions; one three years and the other a year before he sustained the injuries sued for. The witness also expressed the opinion that appellee had drunk intoxicants more than was good for him and that he did not regard him a safe subject for insurance. It does not, however, appear from what was said by any of appellant's witnesses that they thought him a confirmed inebriate or an habitual drinker, or that they had seen him under the influence of liquor within a half year of the issuance of the policy sued on. Numerous witnesses, including intimate daily associates, one a physician, testified in appellee's behalf that he had been periodically in the habit of taking several drinks daily, but none of them

had known him to be a constant or habitual drinker or regarded him confirmed in the drinking habit; and all of them had known him to go for months without drinking at all. The physician, Dr. Wilson, had treated him for nervous disorders believed to have been caused by drinking, but had never known him to be drunk.

The Rev. J. H. McCullagh, secretary of the American Sunday School Union, an uncle of appellee, testified that the latter was his private secretary for a year or more and at the time of receiving his injuries occupied a room adjoining his; that he could recall but one or two occasions during the five years preceding the accident when he even suspected appellee of having taken a drink of spirituous liquor, and that he had never seen him under the influence of such liquors or known of his being so.

According to appellee's own testimony regarding his habits for three or four years preceding his application for the policy sued on, he did no drinking in 1912; drank at intervals five or six drinks in the afternoons or evenings with friends at the club or their homes during portions of the years 1913, 1914, 1915 and also down to September 15, 1916; but that from that date, which was more than two months before the application for the policy sued on was made, down to several months after the accident causing his injuries, and until given whisky during a surgical operation on his injured knee, he drank no intoxicating liquors at all.

On the trial in the court below, appellant's agent, Banks, was asked this question: "I see this policy says 'my habits are temperate; my hearing is not impaired, etc., except as herein stated.' I will ask you what conversation took place between you and Mr. McCullagh in reference to that matter?" To the above question the witness gave the following answer: "I read that statement to Mr. McCullagh and he said something to the effect 'you know about what my habits are; you know me pretty well, and what they have been.' I stated what his habits were at that time was the question, and he said, 'I haven't taken a drink for two or three months,' and I said, 'We will let it stand then.'" By the closing sentence of the above answer, Banks meant, of course, to say that appellee's answer should be "my habits are temperate," and those words as printed in the policy and application were allowed to remain therein as the statement of McCullagh that his habits were temperate.

It is therefore apparent that the answer expressed the judgment of Banks, as well as that of appellee, resulting from their equal familiarity with the facts and deliberate consideration of same. It is to be remarked, too, that appellee made no representation that he was a total abstainer or temperate drinker, or, indeed, any representation whatever on the subject, except that he had not taken a drink for two or three months, which was uncontradicted. He, however, appealed to the knowledge of Banks as to his habits respecting the use of intoxicating liquors and left it to his judgment to determine what answer should be given to the question, regarding his use of such liquors, contained in the application and policy. It is also to be remarked that the question as to the insured's habits contained in the application and policy is general in its character. It did not inquire whether he had ever been intoxicated, or how often intoxicated; how long had been his use of intoxicating liquors or how many drinks he was accustomed to take per month, week or day. Indeed, no specific inquiry was made concerning appellee's use of intoxicating liquors. The only information demanded of him on the subject was whether his habits were then temperate; to which he gave an affirmative answer based on his knowledge of Banks' familiarity with his habits, and the assurance of the latter that the question to be answered related to his habits at the time of applying for the insurance; in the light of all which his belief in the truth of the answer is not improbable.

In Metropolitan Life Ins. Co. v. Ford, 126 Ky. 49, we held that an insurer issuing a life policy has the right to inform itself of the habits of the insured with respect to the use of intoxicants, and that he must truthfully give the information asked; but, unless his representations are substantially untrue, they are not misrepresentations precluding recovery on the policy. In that case we also held that where there is a contrariety of evidence regarding the insured's use of intoxicants, the question whether he had misrepresented his habits as to their use should be left to the decision of the jury, whose finding thereon would not be disturbed by the court, unless palpably against the evidence. In Mutual Life Ins. Co., N. Y., v. Thomson, etc., 94 Ky. 253, the court in considering this question, declared: "But it seems to us an inquiry in regard to the previous habits of drinking intoxicating liquors is not material, unless they exist to such an ex-

tent as to affect the health or physical condition of the applicant, and thereby render him an unsatisfactory subject for life insurance.''

In the case, *supra,* the jury found that the answers of the insured to the questions in the application concerning his habits as to the use of intoxicants were not misrepresentations, and it was held in the opinion that the finding was sustained by the evidence, which conclusion led to the affirmance of the judgment of the trial court. In Provident Savings Life Assurance Co. v. Dees, 120 Ky. 285, a case here strongly relied on by counsel for appellant, but which does not conflict with the view we entertain of the instant case, the opinion approves the rule announced in Mutual Life Ins. Co. v. Thomson, etc., *supra,* but calls attention to the fact that the questions in that case related to the former habits of the insured, while those in the Dees case related to his habits at the time the insurance was taken, and declared that if the answers contained a misrepresentation there could be no recovery, which was an issue of fact to be submitted, by a proper instruction, to the jury. The judgment was reversed, however, because of error in an instruction the trial court had given on that issue.

The rule announced in the several cases, *supra,* is equally applicable to accident insurance. In the instant case, however, the inquiry in the application and policy as to the habits of the insured respecting the use of intoxicants, relates solely to the time the application for the insurance was made; and, in addition, was by the information furnished by appellant's agent, Banks, to the insured, expressly confined to the time the application for insurance was made by the latter.

In view of what admittedly passed between appellee and Banks when the application for the insurance was written, the answer of the former to the inquiry in the application as to his habits respecting the use of intoxicants, was not a representation substantially untrue, nor one important to the risk that could reasonably have influenced appellant's judgment in undertaking the risk or calculating the premium. But whether the representation was true or untrue, appellee evidently believed it furnished a truthful answer to the inquiry in the application regarding his habits, for in making it he acted upon the advice of appellant's agent, Banks, to whom his habits regarding the use of intoxicants and in all other

respects had been well known for twenty years. By the law such knowledge of its agent must be imputed to appellant, and it is estopped thereby to rely upon the alleged misrepresentation in question.

The authorities all hold to the doctrine that the principal is affected with constructive knowledge of all material facts of which his agent received actual notice, or acquires actual knowledge while acting in the course of his employment, and within the scope of his authority, although the agent does not in fact inform his principal thereof. Standard Life & Accident Ins. Co. v. Holloway, 24 R. 1856; Crawford's Admr. v. Travelers Ins. Co., 124 Ky. 733; Aetna Life Ins. Co. v. Howell, 32 R. 975; White Plains Coal Co. v. Teague, 163 Ky. 110; Second Corpus Juris 2, 859; Reserve Loan Life Ins. Co. v. Boreing, 157 Ky. 730. It is an equally well recognized doctrine that an agent who solicits insurance will be treated as the agent of the company, and not the insured, notwithstanding a provision in the policy that he is acting as the agent of the insured. Masonic Life Association Western New York v. Robinson, 149 Ky. 80. And where, as was here done, the agent of the company undertakes to write into the application the answers of the applicant to the questions propounded to him and makes false answers to such questions, or by misleading statements induces the applicant to make false answers, when the latter is acting in good faith and without any intention to deceive, the company will be estopped to rely upon the answers to defeat the policy. Masonic Life Association, Western New York v. Robinson, 149 Ky. 80, Western Assurance Co. v. Rector, 85 Ky. 294; Craddock, Vincent & Co. v. Conn. Fire Ins. Co., 160 Ky. 519; Gardner v. Continental Ins. Co., 125 Ky. 464. In such state of case it will be held by the courts either that the questions were not asked, or answered, or that the failure to answer them was waived, or that the answers so made by the agent are to be taken as true. Phoenix Ins. Co. v. Coomes, 13 R. 238; White v. Ins. Co., 12 R. 191; Hosford v. Fire Ins. Co., 127 U. S. 399; Hartford Fire Insurance Co. v. Gray, 80 Ill. 28; Dunbar v. Phoenix Insurance Co., 72 Wis. 492.

Appellant's fourth complaint, relating to the alleged falsity of appellee's answer to the question of the application respecting medical attention rendered him within the five years preceding the accident, is rested upon the argument that the untruthfulness of the answer is dem-

onstrated by the testimony of Dr. Wilson to the effect that he had on several occasions, during the fifteen years he had been appellee's physician, treated him for extreme nervousness from alcoholism, one or two of such treatments occurring between 1912 and a few months prior to the accident. But as, according to the statements of the physician, only one treatment, consisting of the giving of a bromide to the patient, was administered on each occasion, this testimony, which was all that bore upon the truth or falsity of the answer in question, tended to sustain, rather than contradict, the statement of the answer in the application that appellee had not in the past five years, except for small local disorders, received medical attention. Obviously, it was the province of the jury to pass upon the truth or falsity of the answer, and their finding in favor of appellee on this issue cannot be said to be unsupported by the evidence.

As the evidence in this case clearly shows that all the answers of appellee to the questions contained in the application for the insurance granted by the policy sued on, were either written or dictated by appellant's agent, Banks, whose knowledge of the facts communicated by the answers, whether true or false, was equal to that of appellee; and there being neither allegation nor proof of fraud or collusion between the agent and appellee, the doctrine of estoppel was properly applied by the jury as to all the grounds of defense pleaded in the answer; and as the verdict is supported by the evidence it should not be disturbed, unless there was error of law in some ruling of the court made during the progress of the trial.

We find no merit in appellant's complaint of the trial court's refusal of the peremptory instruction directing a verdict for it, asked at the conclusion of the evidence. It is insisted for appellant that the court erred in instructing the jury that the agent's knowledge of appellee's intemperate habits was imputable to appellant. Discussion of this objection is deemed unnecessary in view of the conclusions of law and analysis of the evidence already set forth in the opinion. Nor do we regard the court's refusal of an instruction offered by appellant defining "habit," error. As what constitutes "habit" or "habits" in the sense employed in the application and policy, is so clearly explained by the instructions as to leave no doubt in the minds of the jury of its correct

meaning. We find no prejudicial error in the refusal by the trial court of other instructions offered by appellant. Two of them reiterated in converse form the law as defined in the instructions given by the court. Another was properly refused because of its advice to the jury that the appellant insurance company should not have imputed to it such knowledge of the falsity, if any, of answers made by appellee to questions in the application as may have been in the possession of its agent, Banks, at the time of the making of the application.

In some respects the instructions given might have been more aptly expressed, but as on the whole they stated in substantially correct terms all the law necessary to a proper decision by the jury of the issues of fact involved, we find no cause for withholding our approval of them.

Judgment affirmed.