## Commonwealth Life Ins. Co. v. Keen

June 16, 1950.

R. L. Maddox, Judge.

302

C. W. Hoskins, William H. Abell, and Galpin & Abell, for appellant.

A. E. Cornett and Cornett & Dixon, for appellee.

JUDGE LATIMER—Reversing.

Appellee, Wiley Keen, brought this action on an insurance policy on the life of his son, James Walker Keen. The policy in question, issued by appellant in 1946, was in the sum of $2,000. Approximately 16 months after the issuance of the policy, James Walker Keen died, at the age of 17, with what medical authorities designated rheumatic heart disease. The policy was what is termed a non-medical policy, that is, issued without medical examination. Following the filing of proof of death, appellant learned for the first time that James Walker Keen had suffered from rheumatic heart disease for at least two years prior to the issuance of the policy; that he had been treated in the Lexington Clinic in 1944, 1945, and had been confined in the Good Samaritan Hospital in Lexington for a week in 1945; and that the treating doctor, Dr. Kavanaugh, in making his diagnosis in 1945, found that James Walker Keen was suffering from rheumatic heart disease, and that his condition in 1945 was, such that there was no hope of ultimate recovery.

Trial resulted in verdict in favor of the father of the deceased boy, the named beneficiary in the policy. Commonwealth Life Insurance Company appeals, insisting that it was entitled to a peremptory instruction because (1) at the time the policy was delivered the insured was admittedly in unsound health, and (2) if not entitled to a peremptory instruction it was entitled to have the issue of sound health submitted to the jury, and the failure of the trial court to give such requested instruction was reversible error.

Appellee insists that the agent, Mr. Petrey, did not ask any of the questions in the application but merely inserted the answers therein as of his own knowledge, and, therefore, appellant is estopped to rely upon mis-

representations in the absence of bad faith on the part of the insured because the agent, with knowledge of the fact, wrote the untrue answers in the application. It is insisted further that the agent of this insurer, by writing in answers to questions in application from information in his possession, waives provisions in policy and application regarding the falsity or truth of answers contained therein.

Appellee insists finally that the soliciting agent for an insurance company, in possession of the facts concerning the physical condition of the insured, may waive the sound health provision of the policy.

It will be unnecessary to enter into a prolonged discussion of the matter herein. The application, which is made a part of the insurance contract, contains two provisions of significance. We note this language: (1) "that no information acquired by any representative of the Company shall bind the Company unless it shall have been set out in writing in this application or the medical examiner's report" and (2) "that any policy issued shall not take effect unless and until the policy. has been delivered * * * provided further that I am on such date in good health."

Among the questions and answers in the application, we find these:

"Q. 32. During the past 5 years, have you lost time from work because of sickness or accident? A. No.

"Q. 33. Have you consulted a doctor during the past five years? A. No.

"Q. 34. Have you ever had any illness, injury or operation? A. No.

"Q. 35. Are you now in good health and free from all symptoms or complaints? (If not, give details.) A. Yes."

There is a conflict in the testimony relative to these questions and answers. Mr. Petrey, appellant's agent, testified that he asked each of the above questions and that Mr. Keen made the answers as inserted therein. Appellee stated that the agent, Petrey, inserted the answers from his own knowledge and information without asking any of the questions. Appellee further testified that he told Mr. Petrey that his son had had rheumatic fever

but that he thought he was much improved since his dismissal from the Good Samaritan Hospital in Lexington. Appellee says he signed the application without reading same. Without questioning the testimony of appellee with respect to the above questions and answers, we cannot escape the fact, according to appellee, that at least four members of his family carried insurance. Any applicant for insurance, especially one who has taken out policies on four members of his family, has, or should have, some reasonable knowledge of the nature and purpose of the questions in an application. We cannot further escape the fact that both appellee and his son signed the application and that each of them knew of the trips to the Clinic and of the stay in the hospital, and that the answers to the above questions, relative to the physical history of the insured, by no means portrays the true story. Further, it is hardly conceivable that the father of this 17 year old boy knew nothing of the true nature of his son's condition, especially in view of the attending physician's statement that in 1945, while the boy was in the hospital, his diagnosis revealed that the boy had rheumatic heart disease with no likelihood of recovery. The Company doctor testified that, had the true story been known, the Company would have by no means issued the policy.

Thus, we see we have before us not only the misleading statements relative to physical condition, but we have a person admittedly not in good health upon the delivery of the policy. In the light of the above, we conclude that appellee was entitled to a peremptory instruction. See Western & Southern Life Insurance Company v. Van Hoose's Administratrix, 283 Ky. 577, 142 S.W. 2d 145; and Kentucky Central Life & Accident Ins. Co. v. Lynn, 304 Ky. 416, 418, 200 S.W. 2d 946.

The judgment is reversed for proceedings consistent herewith.

JUDGE HELM not sitting.