### LINCOLN INCOME LIFE INSURANCE COMPANY, Appellant,

### v.

### Florence BURCHFIELD, Appellee.

Court of Appeals of Kentucky.

July 2, 1965.

Rehearing Denied Oct. 29, 1965.

William A. Young, Frankfort, for appellant.

Herbert D. Liebman, Frankfort, for appellee.

PLEAS JONES, Special Commissioner.

This is an appeal from a summary judgment granted appellee, Florence Burchfield, by the Franklin Circuit Court on her motion against appellant, Lincoln Income Life Insurance Company.

The only question to be determined on this appeal is the propriety of the ruling of the lower court.

James M. Burchfield died on November 2, 1961, survived by his wife, the appellee. At the time of his death he was insured by appellant under a contract of insurance designated as ordinary life insurance in the amount of seventy-five hundred ($7500.00) dollars. This policy of insurance had been issued to him on July 1, 1960.

After the death of appellee's decedent, she, as the beneficiary, made claim with appellant for the proceeds of the policy. Appellant declined to pay and this action resulted.

In the lower court appellant defended its refusal to pay on the ground that appellee's decedent made false answers in the application signed by him, that he likewise made false answers to the questions asked him by appellant's medical examiner and that these answers were material to the risk assumed under the contract of insurance.

Appellee contended that appellant is estopped from denying coverage on the ground of misrepresentation for the following reasons: (1) That the appellant secured an independent medical examination by a physician of its choice; (2) that it conducted a personal investigation prior to issuance of the policy through the services of the Retail Credit Corporation; (3) that it had actual information in its files regarding the applicant's medical history at the time the policy in question was issued and, (4) that appellant's agent had personal knowledge of applicant's medical record and hospitalization prior to solicit-ing the application in question on June 10, 1960.

After the taking of the depositions of numerous witnesses, including officers and agents of appellant, each of the parties moved for summary judgment. The matter having been decided adversely to appellant, the same contentions made in the lower court are reiterated in this Court.

The evidence reveals that from the period commencing September 22, 1958, to June 10, 1960, appellee's decedent executed applications for insurance with appellant's agent, R. L. Heaton, which resulted in the issuance of various medical and hospitalization contracts. These were referred to as "weekly debit" policies and required no medical examination.

On June 10, 1960, appellee's decedent applied for ordinary life insurance in the amount of $7500.00. The policy was issued on July 1, 1960, after Dr. R. S. Long, a physician employed by appellant had submitted his medical examination report and after appellant's underwriting department had an independent investigation of appellee's decedent through the Retail Credit Corporation.

Some six months prior to the issuance of the policy in question appellee's decedent sought the professional services of Dr. W. H. Rush of Frankfort, Kentucky. He was hospitalized in King's Daughters' Hospital from January 23, 1960, to January 27, 1960. The cause of his illness was diagnosed by Dr. Rush as cardio-vascular renal disease and hypertension. While in the hospital, X-rays were taken of appellee's decedent and he was subjected to various tests, including blood analysis and blood sugar tests.

The evidence shows that Heaton, appellant's agent in the numerous insurance transactions with appellee's decedent for almost three years, saw appellee's decedent every two weeks when he collected on the weekly debit policies which were all in force at the time of the death of appellee's

decedent. He testified that he delivered a check for $80.00 issued by appellant for the four days the decedent was in the hospital in January 1960.

It is further shown by the evidence that Dr. Long, appellant's medical examiner, examined appellee's decedent on two occasions. On the first, his blood pressure was not within acceptable limits. Later, when his blood pressure had decreased, he was examined again, and approved by Dr. Long for insurance.

Appearing among other questions and answers on the application executed by appellee's decedent on June 10, 1960, were the following pertinent ones: "Are you now in good health and free from the effects of illness and injury?" The response by appellee's decedent was: "Yes." "What medical attention have you had in the past five years?" The reply of appellee's decedent was: "None." It is significant to note that the agent Heaton testified that all of the questions and answers on the application were in his handwriting, with the exception of the signature of appellee's decedent.

Appellee testified that decedent was rejected from military service in 1944 by reason of hypertension. Among other questions asked by Dr. Long and the answers given by appellee's decedent, were the following: "Have you ever, for physical or mental reasons * * * been given a deferred draft classification?" "Have you ever had or been told you had or been consulted or treated by a physician or other practitioner for any of the following: Disease of the heart or blood vessels, increased or abnormal blood pressure?" "Have you ever had any of the following: Electrocardiogram, blood test of any kind, X-ray as treatment or diagnostic study?" The appellee's decedent answered "No" to each of these questions.

Thus, we see that the record is replete with misrepresentations made by appellee's decedent in the application for insurance with appellant company. The question with which we are confronted is: Were they material to the risk assumed by the appellant?

KRS 304.656 reads:

"All statements or descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, unless material or fraudulent, shall not prevent a recovery on the policy."

In a long line of cases, it has been very definitely established by this Court that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of life insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein. See Mills v. Reserve Life Insurance Co., Ky., 335 S.W.2d 955.

There is an exception to the rule that false answers to questions concerning matters material to the risk will void a policy of insurance and that exception is that where the insurer was fully cognizant of all the facts it cannot be said, as a matter of law, that it relied upon the written statements contained in the application. Suttles v. Kentucky Home Mutual Life Insurance Company, 300 Ky. 696, 189 S.W.2d 845.

In Am.Jur., Insurance, Volume 29A, Section 1018, page 192, the following rule is stated:

"Since an insurance company, like any other corporation, must act and contract through the aid and by means of officers and agents, the knowledge or notice which the company possesses is, generally, that with which it is chargeable or is deemed to have because of the knowledge of or notice to

its duly authorized agents * * *."
Continuing in Section 1020, page 193:

" * * * Consequently, where the knowledge of an insurance agent relates to a material misrepresentation or breach of warranty or condition which would otherwise render the policy unenforceable at its inception, the insurer issuing the policy will not be permitted to take advantage of such breach, or cause of forfeiture. * *."

Douglas E. Nickens, assistant secretary of the underwriting department of the appellant, testified that the application of appellee's decedent was checked against an alphabetical master file to determine the experience appellant had with appellee's decedent and that the records indicated a hospital claim paid by appellant in the amount of four days hospitalization from January 23, 1960, through January 27, 1960. The evidence of Nickens further shows that regardless of what was stated on the application, a medical examination was required prior to the issuance of the policy.

We have reached the conclusion that the appellant did not rely on the statements in the application in issuing the policy to appellee's decedent. Appellant was fully cognizant of the facts in the instant case and, as a consequence, the lower court was justified in granting summary judgment to appellee. We are buttressed in this conclusion by the many insurance transactions between appellant and appellee's decedent and by the facts that: Appellant had in its files the hospital records of the decedent; appellee's decedent had been examined by appellant's doctor and, his medical record was known by appellant's agent at the time of the taking of the application.

It is recommended that the judgment of the trial court granting a summary judgment to the appellee be affirmed.

The opinion is approved by the Court and the judgment is affirmed.