**KENTUCKY CENTRAL LIFE INSURANCE COMPANY, Appellant,**

v.

**Dove COMBS, Appellee.**

Court of Appeals of Kentucky.

April 26, 1968.

Rehearing Denied Nov. 1, 1968.

F. Byrd Hogg, Hogg & Cornett, Whitesburg, for appellant.

C. A. Noble, Jr., Hazard, for appellee.

MONTGOMERY, Judge.

Kentucky Central Life Insurance Company has been granted an appeal from a judgment of $1,000 in favor of Dove Combs, beneficiary under a policy of insurance on the life of Jim Combs. KRS 21.060(2). Appellant insists that it was entitled to a directed verdict because of false material answers to certain questions in the application for insurance.

The application for the policy was taken by appellant's agent, George Lucas, on March 1, 1964. The insurance became effective on March 9, 1964. The insured died of congestive heart failure on September 12, 1964.

The application contains the following questions and answers:

"8. Has Proposed Insured had any illness, injury or accident in past five years? (No)"

\* \* \* \* \* \*

"10. Has Proposed Insured ever had any disease of the heart, liver or kidneys; cancer or diabetes? (No)"

Appellant says that after claim was made it discovered through a routine retail credit investigation that the insured had been confined in the Hazard Miners Memorial Hospital for a heart ailment and diabetes on October 22, 1962, for four days' treatment, and that he was still suffering from diabetes and heart disease at the time of his death.

Upon the trial, appellee, wife of the insured, admitted that her husband had the ailments prior to the application and that the answers to questions 8 and 10 in the application were false. Logan Combs testified that he was present when the agent of appellant took the application from his father. He described what transpired as follows:

"A. Asked him if he had been in the hospital in the last three years, writing up an application for a policy, he told him a year and a half ago. He asked him what his trouble was and he told him he had a little heart trouble, and I started laughing then, just making a joke out of it, I told my Dad, 'They won't sell you an insurance policy and you with heart trouble,' and George said, 'We'll not put that on there,' and he wrote it up."

Lucas denied this conversation. Jim Combs was illiterate. Either Logan Combs or George Lucas signed Jim's name to the application for him.

KRS 304.656 provides:

"All statements or descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, unless material or fraudulent, shall not prevent a recovery on the policy."

■ This statute has been construed to mean that a misrepresentation which is material or fraudulent bars a recovery. Metropolitan Life Insurance Company v. Tannenbaum, Ky., 240 S.W.2d 566; Reserve Life Insurance Company v. Thomas, Ky., 310 S.W.2d 267; Mills v. Reserve Life Insurance Company, Ky., 335 S.W.2d 955.

■■ The rule gleaned from the statute, as so construed, is that when the falsity of the representation is established and its materiality is not disputed, there can be no recovery. This is true despite the illiteracy of the applicant. The cases cited say that an illiterate shall not permit an application to be signed for him until he has had a responsible person to examine for correctness the answers inserted by the agent. It is admitted by appellee that the applicant had his son at his side who could have checked the accuracy of the answers in the application. In each of the cases cited, the fact that the agent had inserted false answers did not relieve the applicant of this responsibility.

■ Admittedly, the answers given to questions 8 and 10 were false and material. Falsity and materiality of the answers seem to be the controlling standards. An exception is when the insurer is fully cognizant of all material facts concerning the insured's state of health, in which event it cannot be said as a matter of law that the insurer relied on the written statements in the application. Lincoln Income Life Insurance Company v. Burchfield, Ky., 394 S.W.2d 468. Such was not the case here.

■ The present case was submitted to the jury on the issue of whether the applicant signed the application, knowing that the agent had inserted false answers therein. This was a false issue. Under the statute and the cases cited, the true issue was whether the misrepresentations were material, as they admittedly were. In such case, a directed verdict should have been granted in favor of the appellant, whose motion for judgment n. o. v. should also have been sustained.

Judgment reversed.

WILLIAMS, C. J., and EDWARD P. HILL, MILLIKEN and STEINFELD, JJ., concur.

OSBORNE and PALMORE, JJ., dissent.

OSBORNE, Judge (dissenting).

The real question presented in this case is who must bear the responsibility for the acts of an insurance agent done when filling out an application for a policy to be submitted to the company. If he is acting as the agent of the insurer, then obviously any false or wrong answers he inserts in the application should not be attributed to the insured, thereby giving the company a weapon with which to void the policy. This question was answered in Standard Auto Insurance Association v. Russell, 199 Ky. 470, 251 S.W. 628 (1923). Here the insured filed an application with the company containing erroneous statements, one of which concerned the value of the automobile insured. After a loss, the company based its defense upon the false answers in the application. The insured countered this defense with the contention that the false answers were inserted by the agent of the company and did not represent the actual responses to the questions which he had given. In resolving the issues between the parties, this court said:

"Our rule regards an insurance solicitor as the agent of the company and not of

the insured; and if such agent writes false answers to questions propounded to the applicant, or by misleading statements induces the applicant to make false answers, when the applicant is acting in good faith and without any intention to deceive, the company will be estopped to rely upon the answers to defeat the policy. * * *

"It is the general rule, says 14 R.C.L. p. 1174, that an insurance agent, in making out an application for insurance, acts as the agent of the insurer, and not of the insured, and if the insured makes proper answers to the questions propounded, the insurer cannot take advantage of a false answer inserted by its agent contrary to the facts as stated by the applicant. Nor can the insurer avoid the force of this rule by stating in the policy that the agent or the physician acts as the agent of the insured in taking the application or in making the medical examination, as such a statement in the policy is, generally speaking, in direct variance with the actual facts; and the same is true of a provision that it shall not be responsible for the agent's act. Masonic Life Ass'n of Western N. Y. v. Robinson, 149 Ky. 80, 147 S. W. 882, 41 L.R.A.,N.S., 505; Id., 156 Ky. 371, 160 S.W. 1078; Knights of Maccabees of the World v. Shields, 156 Ky. 270, 277, 160 S.W. 1043, 49 L.R.A.,N.S., 853."

In Wright's Adm'r v. Northwestern Mut. Life Ins. Co., 91 Ky. 208, 214, 15 S.W. 242, (1891), in dealing with the same problem dealt with in the Russell case, this court said:

"Although the questions were not put to nor answered by William Wright, but by his mother, acting for him, yet, if the agents were informed by her of his actual occupation, the company is as much bound thereby, if at all, as if he had given the information. And, while it is doubtless true that the company would not have issued the policy if the answer of Rebecca Wright in respect to his occupation had appeared in the application, as some of the witnesses testified on the trial she made it, it is equally manifest the policy would not have been accepted, nor any premiums paid, if either Rebecca Wright, who paid, or William Wright, for whom it was paid, had believed a forfeiture would or could be legally claimed upon the grounds now relied on as defense to the action. * * * 'An insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment, as if they proceeded from the principal.' It seems to us, considering the amount of business intrusted to and done by soliciting agents of insurance companies, the circumstances under which and persons with whom it is generally done, and the opportunities they have, and temptation put in their way by the companies to overreach those desiring, or, rather, those whom they persuade to insure, the rule mentioned would be nearly inoperative, if not made to apply to them as well as general agents; for a large, if not the largest, portion of the business and consequent profits of life insurance companies is obtained by them. They are empowered to solicit and receive applications, which every company well knows cannot in many, if not most, cases be made out intelligently by applicants without their advice and instruction; and moreover, as pay for their services is made to depend upon commissions on premiums collected, they have a direct interest in making each application conform to requirements of the company, which may be, and is often, done by explanations and assurances that are deceptive, yet relied on by the insured. We think not to make an insurance company responsible for acts and declarations of its soliciting agents in the matter of preparing applications would not only give it undue advantage of ill-informed and unsuspecting persons, but be an invitation to both the company and its agents to take it."

In commenting upon the Wright case in Hurst Home Ins. Co. v. Ledford, 207 Ky. 212, 268 S.W. 1090, (1925), we said:

"This case has been followed and approved by the court in many subsequent opinions. See cases collected thereon in Caldwell's Notes to Kentucky Reports, vol. 2, p. 1539, vol. 3, p. 920. Some recent cases upholding the rule are Aetna Life Insurance Co. v. McCullagh, 185 Ky. 664, 665, 215 S.W. 821; Standard Auto Ins. Ass'n v. Russell, 199 Ky. 470, 251 S.W. 628; Same v. Henson, 201 Ky. 230, 256 S.W. 414. These opinions rest upon the ground that the principal is bound by the acts of his agent within the scope of his apparent authority, though his authority may be in fact limited, if the person dealing with him is ignorant of the limitation upon his authority. Few persons understand insurance who have not made it a special study. The agent who comes to get the insurance is the only person they deal with or know in the transaction. The rule that he represents the company and not the insured in taking the application is just and is generally recognized. 14 R.C.L. p. 1174."

The above cases have never been overruled, nor so far as I have been able to determine, criticized in any way by this court. Since they are obviously contrary to the holding of the majority in the case at bar, this poses the question of where and how was the rule lost? Review of the cases discloses that there has never been a conscious departure from the rule. There has been a misinterpretation of the facts and a misapplication of the law to them.

One of the leading cases wherein the stage was set for this fiasco is Connecticut Fire Insurance Company v. Roberts, 226 Ky. 534, 11 S.W.2d 148. Here the insured claimed an agent of the company waived a clause in a fire policy which prohibited the purchase of additional insurance. The company denied the claimed waiver on the grounds that the agent did not have authority to make it. This court held that since the agent in this case did not have authority to issue a policy and the policy provided that the agent could not waive the provisions therein and since the insured had notice of the agent's limited authority his purported waiver of the provision in the policy was invalid.[1] Confusion was further confounded in Prudential Ins. Co. of America v. Jenkins, 290 Ky. 802, 162 S.W.2d 791. Here we differentiated between the different types of insurance agents and reviewed the powers of agent's. We held that a general or issuing agent has power to waive requirements in an application. The opinion states:

"This brings us to a consideration of the main question involved in this litigation which is whether Long possessed the power to waive the provisions of the application and put the insurance into immediate effect. If Long had been a 'general,' or, as it is sometimes referred to, an 'issuing' or 'recording' agent of the company, there could be no doubt of his power to do so, since the presumption of authority created by the high powers actually conferred upon and exercised by agents of this class is such as to clothe them in the eyes of the public with the incidental power of waiver. Continental Insurance Co. of City of New York v. Simpson, 220 Ky. 167, 294 S.W. 1048. While not so broadly stated, the effect of the decisions of this and the courts of many other states is to make the presump-

[1.] It will be noted that in the Roberts case there was an existing policy in the hands of the insured which provided that the agent could not waive requirements. Therefore, the insured had notice of the agent's limited authority. This case is not in any way authority where the ques- tion involves the powers of an agent in filling in questions on an application for a policy at a time when the insured has no notice of the agent's authority. In fact, the opinion distinguishes Wright's Adm'r v. Northwestern Mutual Life Ins. Co. (supra).

tion of the general agent's power of waiver conclusive, thus completely nullifying the effect of the printed notice usually found on insurance policies."

The principle stated in this case is sound, however, it overlooks the Russell case and those following its tenor, viz., if the insured has no knowledge of the limitation, he is not bound by it.

The case where the foregoing rules were grossly misapplied and the first to come before this court involving false statements in an application after Ledford, supra, was Prudential Insurance Company of America v. Lampley, 297 Ky. 495, 180 S.W.2d 399, (1944). Here it was conceded that the statements in the medical application were false. The insured sought to excuse this on the grounds that the agent knew the true facts when he filled out the application. The insured's wife testified:

> "* * * that on the day the application was signed by her husband she told Leo Blake, defendant's agent, that Plez Lampley had a hospital record and his physical condition was such that no insurance company would issue a policy to him." (Emphasis added).

This was denied by the agent. In reversing a judgment for the insured, we said:

> "Appellee endeavored to show that appellant, through its agent, Leo Blake, had knowledge of all the facts, and it is argued that it is estopped to rely upon the falsity of the answers in the application. Blake was merely a soliciting agent, and the applicant had notice of the limitations upon his authority. In the recent case of Prudential Insurance Company of America v. Jenkins,

290 Ky. 802, 162 S.W.2d 791, it was held that where limitations on the soliciting agent's authority are contained in the application, the insured is bound to take notice thereof and cannot hold the company bound for acts of the agent beyond such limitations. *Such an agent cannot bind his principal by an act of waiver which conceals information in the application material to the risk.* (Emphasis added). Staples v. Continental Insurance Company, 223 Ky. 842, 5 S.W. 2d 265; Connecticut Fire Insurance Company v. Roberts, 226 Ky. 534, 11 S. W.2d 148. *Furthermore, the information which appellee claims she gave Blake in the present case was not sufficient to constitute notice of the facts to the company even though Blake had been a general agent with authority to waive the provisions of the application."* (Emphasis added).

The holding here is directly contra to that in the Russell, Wright and Ledford cases, supra, yet nowhere is there a hint in the opinion of an overruling. The court took a set of facts which should have been decided under the Russell line of cases and resolved them under the Jenkins case,[2] without realizing that a misstep had been made. Neither Russell, Wright nor Ledford was cited though directly in point. The court cited as authority Staples v. Continental Insurance Company, supra, and Connecticut Fire Insurance Co. v. Roberts, supra, neither of which are authority for its holding. In the Staples case the question of the agent's authority was specifically reserved, "we do not feel that we are called on to decide the question of Neeley's authority to waive proofs of loss or whether he waived such proofs." As previously pointed out, the Roberts case is

---

2. In Prudential Ins. Co. of America v. Jenkins, 290 Ky. 802, 162 S.W.2d 791 (1942) the question before the court was: Can an agent waive the requirement in a policy that it will not become effective until accepted by the company? The court held the company "*within a reason-*

*able time*" (emphasis added) can reject the application and this provision could not be waived by the agent in this case. This case distinguishes Massachusetts Mutual Life Ins. Co. v. Sexton, 255 Ky. 309, 74 S.W.2d 206, on the basis of the classification of agents.

not in point. The rule erroneously applied in the Jenkins case has been followed by this court in the following cases: Commonwealth Life Ins. Co. v. Bruner, 299 Ky. 335, 185 S.W.2d 408 (1945); Commonwealth Life Ins. Co. v. Keen, 313 Ky. 301, 231 S.W.2d 78 (1950); Metropolitan Life Ins. Co. v. Tannenbaum, Ky., 240 S. W.2d 566 (1951); National Life and Accident Ins. Co. v. Scott, Ky., 240 S.W.2d 849 (1951); Reserve Life Ins. Co. v. Thomas, Ky., 310 S.W.2d 267 (1958); Mills v. Reserve Life Ins. Co., Ky., 335 S.W.2d 955 (1960).

Even though we have constantly followed the rule since 1945 in the Bruner case, the way has not been easy. See dissents by Judges Latimer, Combs and Cammack in Tannebaum, supra. Also concurring opinion by Judge Moremen in the same case, wherein he disagrees with the rule. See also dissent by Judge Palmore in Mills v. Reserve Life Insurance Company, supra. The rule followed by most jurisdictions and the one I consider proper is stated in 29A American Jurisprudence, Insurance, §§ 1057, 1059 and 1060.

"In many instances misrepresentations and untrue statements appear in applications for insurance as the result of the acts or fault of the insurer's own agents, either in the recording of the insured's answers, or in the filling out of the application upon their own knowledge or upon information acquired from others, or perhaps, as the result of advice or directions given the applicant. It has been stated broadly in this respect that since courts will construe insurance policies so as to effectuate them whenever possible, the tendency of the decisions is to hold all those policy conditions waived which have been breached at the time the policy is issued, and which, if enforced, would avoid the policy under its terms as soon as delivered * * *. Thus, where there are no circumstances to arouse the suspicions of an applicant who reveals a history of previous illness to the agent, and the agent advises the applicant that such illness is of no importance, the law does not require the applicant to go further and question the authority or judgment of the agent to decide whether the information is sufficiently important to merit consideration in the application * * * the great weight of authority is that if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogations contained therein which are truthfully answered by the insured, without fraud, collusion, or actual knowledge of the insured, or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application * * *. The chief reason for the majority rule that an insurer cannot rely upon the falsity of answers inserted in an application for insurance by its own agent in response to questions correctly answered by the insured is the protection of the insured who has acted in good faith and answered the inquiries correctly; the insurer, to protect itself, needs only to select competent and trustworthy agents. It has been said that to hold otherwise would be to place every simple or uneducated person seeking insurance at the mercy of the insurer, who could, through its agent, insert in every application, unknown to the applicant and over his signature, some false statement which would enable it to avoid all liability while retaining the price paid for supposed insurance. Many authorities also assert that the result reached in the application of the majority rule is an exemplification of the principle that the knowledge of an agent is imputed to the principal, namely, that an insurer which accepts premiums while charged with a knowledge of the falsity of the statements in the application cannot after-

ward assert the falsity of such statements as a defense to liability under the policy."

The rule followed by the majority opinion in this case is neither practical nor desirable. It was conceived in mistake and places this court in a minority position. For these reasons, I would overrule it, but even beyond this, it penalizes the poor, aged, ignorant and unlettered. Invariably the highly trained soliciting agent of the company seeks these people out and in order to procure a commission for himself takes their money while the company issues a worthless policy. To me, this is the cruelest type of injustice. I realize there are criminal statutes against fraud in this jurisdiction and in many of the instances to which I refer, these statutes would be applicable. However, it has been demonstrated over the many years that their enforcement is cumbersome and it is often difficult to get a person who has been cheated to come before a grand jury where he will, of necessity, have to expose his own credulity, and still not recover his loss. If either party must suffer from an insurance agent's mistakes and wrongdoings, it must be his principal, the insurance company, who hired him in the first instance and has the right to fire him in the last.

For the foregoing reasons, I would overrule the cases relied on in the majority opinion. I agree with Cardoza as quoted by my colleague, Judge Palmore, in Mills v. Reserve Life Insurance Company, Ky., 335 S.W.2d 955:

" 'the inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have the principle of growth.' "

Like the conscience of the guilty, this rule of law will never rest until it is set right.

For the foregoing reasons, I dissent.

PALMORE, J., joins in this dissent.