**No. 04-5161**
File Name: 05a0236n.06
Filed: March 30, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| VIRGIE M. COOK, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| LIFE INVESTORS INSURANCE COMPANY | ) DISTRICT OF KENTUCKY |
| OF AMERICA, | ) |
| | ) |
| Defendant-Appellee. | ) |

Before:     **NELSON** and **SUTTON**, Circuit Judges, and **WELLS**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  The central issue presented here is whether, under Kentucky law, the defendant insurance company could rescind the plaintiff's insurance policy on the ground that there was a material misrepresentation in the plaintiff's signed application.  The district court held that rescission was permissible as a matter of law, and on that basis it entered summary judgment for the company on the plaintiff's claims for recovery under the policy.

We conclude that the case presents genuine issues of material fact that make summary judgment inappropriate.  On the existing record, we believe, a reasonable jury could find that

_____

[*]The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

the company's agent entered a false statement on the plaintiff's application without her knowledge and that the plaintiff signed the application in good faith. Were a jury to so find, Kentucky law would compel a judgment in the plaintiff's favor. We shall therefore reverse the summary judgment.

I

The plaintiff, Virgie Cook, bought a truck from an automobile dealership in June of 2000. The dealership's finance and insurance manager, George Bailey, offered Ms. Cook an opportunity to purchase credit life and credit disability insurance from the defendant, Life Investors Insurance Company of America. Ms. Cook decided to purchase the insurance.

Mr. Bailey presented Ms. Cook with an application that included four questions to be read and answered by the applicant. Two of the questions related to pre-existing medical conditions, one related to the applicant's employment, and one requested additional detail about the responses to the previous questions. Question 2 is most pertinent to this appeal. It asked:

> "Have you within the past 12 months been diagnosed or treated by a physician for having any of the following conditions or diseases[:] Back or Neck Disorder, Nervous or Mental Disorder, Chronic Fatigue Syndrome, or Fibromyalgia?"

This question was to be answered by marking either a box labeled "YES" or a box labeled "NO." It is the "NO" box that was marked on Ms. Cook's application.

There is evidence suggesting that it might have been Mr. Bailey, rather than Ms. Cook, who marked the "NO" box next to Question 2. In August of 2001 Mr. Bailey reported to Life Investors that Ms. Cook had answered the questions on the application but that he could not remember who had marked her answers on the form. (In later testimony about his usual practice, Mr. Bailey said that he sometimes had the customer read the questions and mark the answers and he sometimes read the questions to the customer and marked the answers himself.) Ms. Cook testified unequivocally that it was Mr. Bailey who filled out the application.

Below the question-and-answer section of the application is a section for the applicant's signature. The following declaration appears immediately above the signature line:

> "I/we represent the information and answers to all questions contained herein are true, to the best of my knowledge and belief. I/we agree that they may be relied upon by the insurance company as the basis for issuing the insurance in connection with my/our loan. I/we acknowledge receipt of a copy of this form."

Ms. Cook claims to have signed the application without reading it, and there is no evidence to the contrary.

In July of 2001 Ms. Cook filed a disability claim with Life Investors. She stated that problems with her head, neck, and feet had rendered her permanently disabled in June of that year. Life Investors investigated the claim and learned that Ms. Cook had been treated for neck and back pain since before February of 2000. The company asked Mr. Bailey to

confirm that Ms. Cook had answered the questions on the insurance application, and, as we have said, he did so in August of 2001. Concluding that Ms. Cook had answered Question 2 falsely, Life Investors rescinded the disability coverage and refunded the premium.

Ms. Cook sued Life Investors in a Kentucky court, and the company removed the action to federal district court. Upon consideration of cross-motions for summary judgment, the district court granted Life Investors' motion as to all claims. The foundation of the court's ruling was its determination that Ms. Cook had falsely verified the information on the insurance application by signing the form. The false verification entitled Life Investors to rescind the policy, the court held, because the company would not have issued the policy had it known the truth about Ms. Cook's medical history.

After an unsuccessful motion for reconsideration, Ms. Cook filed a timely appeal.

II

As a general rule, Kentucky law allows the rescission of an insurance policy if the application for insurance contains a fraudulent or material misrepresentation. See Ky. Rev. Stat. § 304.14-110; *Pennsylvania Life Insurance Co. v. McReynolds*, 440 S.W.2d 275, 279 (Ky. 1969); *Kentucky Central Life Insurance Co. v. Combs*, 432 S.W.2d 415, 417 (Ky. 1968). We agree with the district court that Ms. Cook's insurance application contained a material misrepresentation.

First, given Ms. Cook's history of neck and back pain, we think that the "no" answer to Question 2 of her insurance application must be deemed a misrepresentation. We are not persuaded by Ms. Cook's argument that the word "disorder," as used in Question 2, is ambiguous. A condition requiring at least 10 doctor visits over a two-year period – as did the pain in Ms. Cook's back and neck – plainly falls within the ordinary meaning of "disorder," in our view. See Webster's Third New International Dictionary at 652 (defining "disorder" as "an abnormal physical or mental condition" and listing "sickness, ailment, [and] malady" as synonyms).

Second, the misrepresentation was plainly material. "The rule is that a false answer is material if the insurer, acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application if the substantial truth had been stated therein." *Mills v. Reserve Life Insurance Co.*, 335 S.W.2d 955, 958 (Ky. 1960). Life Investors submitted uncontroverted proof that any application containing a "yes" answer to Question 2 would be rejected out of hand.

But the presence of a material misrepresentation in Ms. Cook's application for insurance does not necessarily compel a judgment in favor of Investors Life. Kentucky's highest court held over 80 years ago that an insurance company may not rescind a policy on the basis of false answers placed in an application by the company's agent, rather than by the applicant, if the applicant signed the application in good faith. See *Standard Auto Insurance*

*Association v. Russell*, 251 S.W. 628, 629 (Ky. 1923); *Aetna Life Insurance Co. v. McCullagh*, 215 S.W. 821, 826 (Ky. 1919).

In the 1950s the Kentucky Court of Appeals (as the commonwealth's highest court was known until 1976) began to "place[] more responsibility on an applicant for insurance to see to it that his representations to the company approach the truth." *Reserve Life Insurance Co. v. Thomas*, 310 S.W.2d 267, 270 (Ky. 1958) (citing, *inter al.*, *Metropolitan Life Insurance Co. v. Tannenbaum*, 240 S.W.2d 566 (Ky. 1951)). This trend led to decisions like that in *Mills v. Reserve Life*, where the court held that an insurance company could rescind a policy on the basis of false answers that had been placed in the application by the company's agent notwithstanding that the applicant had given the agent truthful answers and had not read the application (due to illiteracy) before signing it. See *Mills*, 335 S.W.2d at 957-58. As late as 1968, Kentucky's rule was that false answers entered by an insurance company's agent barred recovery under the policy regardless of the applicant's good faith. See *Combs*, 432 S.W.2d at 417.

The Kentucky court reversed course again, however, less than 12 months after its *Combs* decision. In *Pennsylvania Life v. McReynolds*, the court repudiated *Combs*' holding that false answers to application questions always constitute "a material misrepresentation regardless of who inserted them." 440 S.W.2d at 277. The court said,

> "we no longer will place the full responsibility on the applicant . . . to see that the application is correctly filled out . . . . Of course if the applicant knows that false answers are being put down he will be responsible for them." *Id.* at 279.

Under *McReynolds*, the critical inquiry is whether an applicant for insurance acted in good faith when signing an application containing false answers placed there by an agent of the company. See *id.* In that case, the applicant gave the agent truthful information and signed the application (which contained false information) in reliance on the agent's expertise. See *id.* at 276. The court held that the issue of the applicant's good faith should be tried to a jury. See *id.* at 279.

This court, in *Osborne v. American Select Risk Insurance Co.*, 414 F.2d 118, 122 (6th Cir. 1969), followed *McReynolds* in holding that an insurance company's entitlement to rescind a policy depends on whether its agent placed false answers in the application. The court held that a jury must decide whether the agent asked the applicant the questions at issue and whether the applicant answered in good faith. See *id.*

The *Osborne* court suggested that *Combs* remained good law with respect to life insurance applications and that *McReynolds* applied only to applications for other types of insurance. See *Osborne*, 414 F.2d at 121. The Kentucky Court of Appeals held otherwise, however, in *Ketron v. Lincoln Income Life Insurance Co.*, 523 S.W.2d 228, 229 (Ky. 1975) (stating that *McReynolds* "expressly overruled" *Combs* and applying *McReynolds* to a life insurance application). Accordingly, we are satisfied that the *McReynolds* rule governs the case at bar even though the insurance for which Ms. Cook applied was, in part, life insurance.

Under *McReynolds*, the presence of a material misrepresentation in Ms. Cook's insurance application does not compel a judgment in favor of Life Investors if a reasonable

jury could find (1) that Mr. Bailey wrote the false answer to Question 2 and (2) that Ms. Cook signed the application in good faith.

As we have said, the evidence permits a finding that Mr. Bailey, rather than Ms. Cook, marked the "NO" box next to Question 2. A reasonable jury could infer that Bailey did so after reading Cook the question and receiving a negative response (in which case Life Investors' right to rescind the policy would be clear). But that inference is not compelled by the evidence. A reasonable jury could also find, we believe, that Mr. Bailey marked the "NO" box next to Question 2 without ever reading Ms. Cook the question.

When she was deposed in March of 2003, Ms. Cook testified that Mr. Bailey "read some questions off" to her but that she could not remember what they were except for some questions about her employment. Upon further examination, Ms. Cook acknowledged that Mr. Bailey "[p]robably" asked about her medical history, but she qualified her answer by saying he "must not have asked . . . specific questions" because she "didn't lie." Ms. Cook insisted that she gave honest answers to whatever questions she was asked.

For his part, Mr. Bailey had no recollection whatsoever of the transaction, which occurred about three years before the taking of his deposition. Notwithstanding his August 2001 report to Life Investors (where, to repeat, he said that Ms. Cook had answered the application questions), Mr. Bailey testified that he "[couldn't] dispute it" if Cook said she had never been asked Question 2. In the light of this testimony, we cannot say that a reasonable jury would be required to find that Mr. Bailey posed Question 2 to Ms. Cook.

The district court held that this factual issue – whether Mr. Bailey recorded a false answer given by Ms. Cook or inserted a false answer of his own design – is immaterial because Ms. Cook signed the application. In the court's view, Cook necessarily adopted the false answer to Question 2 by affixing her signature, which, as we have seen, appeared below a statement that "the information and answers to all questions contained herein are true, to the best of my knowledge and belief."

This holding is inconsistent, we believe, with the cases cited above. The caselaw teaches that the critical question is whether the applicant acted in good faith. Given Ms. Cook's undisputed testimony that she never read the application before signing it, a jury could conclude that she acted in good faith.

Life Investors argues that Ms. Cook's failure to read the application before signing it precludes a finding of good faith. This argument is contrary to *Ketron*, where the Kentucky court held that an insurance applicant who had not read her application before signing it was not responsible for the false answers inserted by an agent. See *Ketron*, 523 S.W.2d at 228-29. *Ketron* is consistent with earlier Kentucky cases holding that "where an application is made out entirely by the agent of the insurer from his own knowledge, or fraudulently, and the insured, acting in good faith, signs the application without reading it or without knowledge of its contents, the company will be estopped to rely upon the alleged false statements contained therein." *Metropolitan Life Insurance Co. v. Trunick's*

*Administrator*, 54 S.W.2d 917, 918 (Ky. 1932) (citing *Provident Life & Accident Insurance Co. v. Parks*, 38 S.W.2d 446 (Ky. 1931)).

In the light of *Ketron*, we are not persuaded that *McReynolds* can be distinguished from the case at bar on the ground that the applicant in *McReynolds* gave truthful answers to the questions posed by the agent, whereas Ms. Cook asserts only that she was never asked the questions. An applicant who has not been asked all the questions in an insurance application can rely on the agent, it seems to us, no less than an applicant who has been asked the questions and has answered truthfully. The key fact in *Ketron* was that the applicant did not know that her application contained false answers. See *Ketron*, 523 S.W.2d at 229. A reasonable jury could find the same to have been true of Ms. Cook.

In sum, we think that a jury must decide whether Mr. Bailey is the source of the "NO" answer to Question 2 and whether Ms. Cook was aware of that false answer when she signed her insurance application. The judgment entered in favor of Life Investors is therefore **REVERSED**, and the case is **REMANDED** for further proceedings not inconsistent with this opinion.